[859 NE2d 459, 825 NYS2d 653]

CATHOLIC CHARITIES OF THE DIOCESE OF ALBANY et al., Appellants, v GREGORY V. SERIO, as Superintendent of Insurance, Respondent.

Argued September 6, 2006; decided October 19, 2006

## POINTS OF COUNSEL

*Tobin & Dempf LLP,* Albany (*Michael L. Costello* and *Brian R. Haak* of counsel), and *Williams & Connolly LLP,* Washington, D.C. (*Kevin T. Baine* of counsel), for appellants. I. The Women's Health and Wellness Act violates the free exercise provision of the New York Constitution. (*Corporation of Presiding Bishop of Church of Jesus Christ of Latter-day Saints v Amos,* 483 US 327; *Matter of Rivera v Smith,* 63 NY2d 501; *Matter of Brown v McGinnis,* 10 NY2d 531; *People v Barber,* 289 NY 378; *City of Boerne v Flores,* 521 US 507; *La Rocca v Lane,* 37 NY2d 575; *Sherbert v Verner,* 374 US 398; *Matter of Holy Spirit Assn. for Unification of World Christianity v Rosenfeld,* 91 AD2d 190; *People ex rel. DeMauro v Gavin,* 92 NY2d 963; *People v Woodruff,* 26 AD2d 236, 21 NY2d 848.) II. The Women's Health and Wellness Act violates the Free Exercise Clause of the United States Constitution. (*Employment Div., Dept. of Human Resources of Ore. v Smith,* 494 US 872; *United States v Lee,* 455 US 252; *University of Great Falls v National Labor Relations Bd.,* 278 F3d 1335; *Mitchell v Helms,* 530 US 793; *Larson v Valente,* 456 US 228; *Cantwell v Connecticut,* 310 US 296; *Boy Scouts of America v Dale,* 530 US 640; *Espinosa v Rusk,* 634 F2d 477, 456 US 951; *Corporation of Presiding Bishop of Church of Jesus Christ of Latter-day Saints v Amos,* 483 US 327; *Serbian Eastern Orthodox Diocese for United States and Canada v Milivojevich,* 426 US 696.) III. The Women's Health and Wellness Act violates the Establishment Clause of the United States Constitution. (*Larson v Valente,* 456 US 228; *Epperson v Arkansas,* 393 US 97; *Zorach v Clauson,* 343 US 306; *Everson v Board of Ed. of Ewing,* 330 US 1; *Grumet v Pataki,* 93 NY2d 677; *Church of Lukumi Babalu Aye, Inc. v Hialeah,* 508 US 520; *Agostini v Felton,* 521 US 203; *Matter of Holy Spirit Assn. for Unification of World Christianity v Tax Commn. of City of N.Y.,* 55 NY2d 512; *University of Great Falls v National Labor Relations Bd.,* 278 F3d 1335; *Mitchell v Helms,* 530 US 793.)

*Eliot Spitzer, Attorney General,* New York City (*Shaifali Puri, Caitlin J. Halligan, Daniel Smirlock* and *Lisa Landau* of counsel), for respondent. I. The challenged provisions of the Women's Health and Wellness Act do not violate plaintiffs' free exercise rights under the New York Constitution. (*People v Wood-*

*ruff,* 26 AD2d 236; *People ex rel. DeMauro v Gavin,* 92 NY2d 963; *La Rocca v Lane,* 37 NY2d 575; *Matter of Rivera v Smith,* 63 NY2d 501; *Matter of Rourke v New York State Dept. of Correctional Servs.,* 201 AD2d 179; *Employment Div., Dept. of Human Resources of Ore. v Smith,* 494 US 872; *Matter of Miller,* 252 AD2d 156; *McGann v Incorporated Vil. of Old Westbury,* 256 AD2d 556; *New York State Club Assn. v City of New York,* 69 NY2d 211, 487 US 1; *In re Union Pac. R.R. Empl. Practices Litig.,* 378 F Supp 2d 1139.) II. The Women's Health and Wellness Act does not violate plaintiffs' free exercise rights under the Federal Constitution. (*Employment Div., Dept. of Human Resources of Ore. v Smith,* 494 US 872; *Church of Lukumi Babalu Aye, Inc. v Hialeah,* 508 US 520; *Corporation of Presiding Bishop of Church of Jesus Christ of Latter-day Saints v Amos,* 483 US 327; *Cutter v Wilkinson,* 544 US 709; *United States v Lee,* 455 US 252; *Serbian Eastern Orthodox Diocese for United States and Canada v Milivojevich,* 426 US 696; *Kedroff v Saint Nicholas Cathedral of Russian Orthodox Church of North America,* 344 US 94; *Jones v Wolf,* 443 US 595; *First Presbyt. Church of Schenectady v United Presbyt. Church in U.S. of Am.,* 62 NY2d 110; *Presbyterian Church in U. S. v Mary Elizabeth Blue Hull Memorial Presbyterian Church,* 393 US 440.) III. The challenged provisions of the Women's Health and Wellness Act do not violate the plaintiffs' Establishment Clause rights. (*Epperson v Arkansas,* 393 US 97; *Larson v Valente,* 456 US 228; *Walz v Tax Comm'n of City of New York,* 397 US 664; *Agostini v Felton,* 521 US 203; *Lemon v Kurtzman,* 403 US 602; *Matter of Klein [Hartnett],* 78 NY2d 662; *Braunfeld v Brown,* 366 US 599; *Hernandez v Commissioner of Internal Revenue,* 490 US 680; *Bowen v Kendrick,* 487 US 589; *Matter of Holy Spirit Assn. for Unification of World Christianity v Tax Commn. of City of N.Y.,* 55 NY2d 512.)

*Marc D. Stern,* New York City, for American Jewish Congress and another, amici curiae. I. The Court needs to set a standard for applying New York Constitution, article I, § 3. (*Employment Div., Dept. of Human Resources of Ore. v Smith,* 494 US 872; *People ex rel. DeMauro v Gavin,* 92 NY2d 963; *People v Woodruff,* 26 AD2d 236, 21 NY2d 848; *In re Grand Jury Empaneling of Special Grand Jury,* 171 F3d 826; *Smilow v United States,* 465 F2d 802, 409 US 944; *Lightman v Flaum,* 97 NY2d 128; *Matter of New York State Empl. Relations Bd. v Christ the King Regional High School,* 90 NY2d 244; *Ware v Valley Stream High School Dist.,* 75 NY2d 114; *Wisconsin v Yoder,* 406 US 205; *Matter of Fosmire v Nicoleau,* 75 NY2d 218.) II. The standardless

balancing applied by the court below is an inappropriate test for protecting religious liberty under New York Constitution, article I, § 3. (*Ware v Valley Stream High School Dist.,* 75 NY2d 114; *People ex rel. DeMauro v Gavin,* 92 NY2d 963; *People v Woodruff,* 26 AD2d 236; *Vieth v Jubelirer,* 541 US 267; *Employment Div., Dept. of Human Resources of Ore. v Smith,* 494 US 872; *Board of Ed. of Kiryas Joel Village School Dist. v Grumet,* 512 US 687; *Carey v Piphus,* 435 US 247; *Lyng v Northwest Indian Cemetery Protective Assn.,* 485 US 439; *Sherbert v Verner,* 374 US 398.) III. The Court needs to assert a separate state standard under New York Constitution, article I, § 3. (*Employment Div., Dept. of Human Resources of Ore. v Smith,* 494 US 872; *Church of Lukumi Babalu Aye, Inc. v Hialeah,* 508 US 520; *First Presbyt. Church of Schenectady v United Presbyt. Church in U.S. of Am.,* 62 NY2d 110; *Matter of Foy Prods. v Graves,* 253 App Div 475; *O'Neill v Oakgrove Constr.,* 71 NY2d 521; *Matter of Patchogue-Medford Congress of Teachers v Board of Educ. of Patchogue-Medford Union Free School Dist.,* 70 NY2d 57; *Courtroom Tel. Network LLC v State of New York,* 5 NY3d 222; *People v Jacobs,* 6 NY3d 188; *Immuno AG. v Moor-Jankowski,* 77 NY2d 235; *Sherbert v Verner,* 374 US 398.) IV. Strict scrutiny is not inevitably fatal. (*Valley Forge Christian College v Americans United for Separation of Church & State, Inc.,* 454 US 464; *Sherbert v Verner,* 374 US 398; *Lyng v Northwest Indian Cemetery Protective Assn.,* 485 US 439; *Grutter v Bollinger,* 539 US 306.) V. The Women's Health and Wellness Act protects the peace and safety of the state. (*Cornell Univ. v Bagnardi,* 66 NY2d 603.)

*Elisabeth Ryden Benjamin,* New York City, *Galen Leigh Sherwin, Arthur N. Heisenberg, Julie Sternberg* and *Diana Kasdan* for New York Civil Liberties Union and another, amici curiae. I. The Women's Health and Wellness Act does not violate appellants' free exercise rights under the New York Constitution. (*People v Barber,* 289 NY 378; *Matter of Rivera v Smith,* 63 NY2d 501; *People v Pierson,* 176 NY 201; *Williams v Bright,* 230 AD2d 548; *La Rocca v Lane,* 37 NY2d 575; *People v Woodruff,* 26 AD2d 236, 21 NY2d 848; *Matter of Brown v McGinnis,* 10 NY2d 531; *People ex rel. DeMauro v Gavin,* 92 NY2d 963; *Sherbert v Verner,* 374 US 398; *Matter of Watson,* 171 NY 256.) II. The Women's Health and Wellness Act does not violate appellants' free exercise rights under the Federal Constitution. (*Employment Div., Dept. of Human Resources of Ore. v Smith,* 494 US 872; *Church of Lukumi Babalu Aye, Inc. v Hialeah,* 508 US 520; *DeMarco v Holy Cross High School,* 4 F3d 166; *Catho-*

*lic High School Assn. of Archdiocese of N.Y. v Culvert,* 753 F2d 1161; *Corporation of Presiding Bishop of Church of Jesus Christ of Latter-day Saints v Amos,* 483 US 327; *Dole v Shenandoah Baptist Church,* 899 F2d 1389; *Gillette v United States,* 401 US 437; *Roemer v Board of Public Works of Md.,* 426 US 736; *Hunt v McNair,* 413 US 734; *Tilton v Richardson,* 403 US 672.) III. The Women's Health and Wellness Act does not violate the Establishment Clause of the Federal Constitution. (*Matter of Germenis v Coughlin,* 232 AD2d 738; *Matter of Lewis v Allen,* 11 AD2d 447, 14 NY2d 867; *McGowan v Maryland,* 366 US 420; *Equal Empl. Opportunity Commn. v Tree of Life Christian Schools,* 751 F Supp 700; *Bowen v Kendrick,* 487 US 589; *Gillette v United States,* 401 US 437; *Graham v Commissioner of Internal Revenue Serv.,* 822 F2d 844; *Bob Jones Univ. v United States,* 461 US 574; *Larson v Valente,* 456 US 228; *Kong v Scully,* 341 F3d 1132.)

*Wilmer Cutler Pickering Hale and Dorr LLP,* Washington, D.C. (*A. Stephen Hut, Jr., Kimberly A. Parker* and *Ilona R. Cohen* of counsel), for American College of Obstetricians and Gynecologists, New York District, and others, amici curiae. I. Access to contraception is essential to the basic health care of New York women and their children. II. Access to prescription contraception allows more New York women and their children to benefit from contraception and provides additional health advantages. III. The Women's Health and Wellness Act's prescription contraceptive coverage provision is necessary to ensure that New York women have adequate access to the wide range of contraceptive methods. IV. The Women's Health and Wellness Act furthers a compelling state interest and does not violate the Free Exercise Clause of either the Federal or New York State Constitution. (*Employment Div., Dept. of Human Resources of Ore. v Smith,* 494 US 872; *Church of Lukumi Babalu Aye, Inc. v Hialeah,* 508 US 520; *United States v Lee,* 455 US 252; *People v Woodruff,* 26 AD2d 236; *Matter of Miller,* 252 AD2d 156; *Matter of Sampson,* 37 AD2d 668; *Prince v Massachusetts,* 321 US 158; *People ex rel. Fish v Sandstrom,* 279 NY 523.)

*Wingate, Kearney & Cullen,* Brooklyn (*Kevin M. Kearney* of counsel), *Mark E. Chopko,* Washington, D.C., and *Michael F. Moses* for Becket Fund for Religious Liberty and others, amici curiae. I. This case has grave implications for all religious denominations. II. Forcing appellants to pay for insurance coverage for contraceptives in their own workplaces violates the First Amendment to the United States Constitution. (*Lemon v Kurtz-*

*man,* 403 US 602; *Illinois ex rel. McCollum v Board of Ed. of School Dist. No. 71, Champaign Cty.,* 333 US 203; *Everson v Board of Ed. of Ewing,* 330 US 1; *Larkin v Grendel's Den, Inc.,* 459 US 116; *Gonzalez v Roman Catholic Archbishop of Manila,* 280 US 1; *City of Boerne v Flores,* 521 US 507; *Prince v Massachusetts,* 321 US 158; *Walz v Tax Comm'n of City of New York,* 397 US 664; *Kedroff v Saint Nicholas Cathedral of Russian Orthodox Church of North America,* 344 US 94; *Presbyterian Church in U. S. v Mary Elizabeth Blue Hull Memorial Presbyterian Church,* 393 US 440.) III. The statutory exemption is neither constitutional nor rationally related to a legitimate government objective. (*Lemon v Kurtzman,* 403 US 602; *University of Great Falls v National Labor Relations Bd.,* 278 F3d 1335; *National Labor Relations Bd. v Catholic Bishop of Chicago,* 559 F2d 1112, 440 US 490; *Mitchell v Helms,* 530 US 793; *United States v Ballard,* 322 US 78; *Locke v Davey,* 540 US 712; *Larson v Valente,* 456 US 228; *Church of Lukumi Babalu Aye, Inc. v Hialeah,* 508 US 520; *Wilson v National Labor Relations Bd.,* 920 F2d 1282.) IV. The contraceptive mandate is per se unconstitutional; in the alternative, the mandate is not the most restrictive means of furthering a compelling state interest. (*Lemon v Kurtzman,* 403 US 602; *Church of Scientology Flag Serv. Org., Inc. v Clearwater,* 2 F3d 1514; *Larson v Valente,* 456 US 228; *Equal Empl. Opportunity Commn. v Roman Catholic Diocese of Raleigh, N.C.,* 213 F3d 795; *Combs v Central Tex. Annual Conference of United Methodist Church,* 173 F3d 343; *Equal Empl. Opportunity Commn. v Catholic Univ. of Am.,* 83 F3d 455; *Gellington v Christian M.E. Church, Inc.,* 203 F3d 1299; *Employment Div., Dept. of Human Resources of Ore. v Smith,* 494 US 872; *Corporation of Presiding Bishop of Church of Jesus Christ of Latter-day Saints v Amos,* 483 US 327; *Hall v Baptist Mem. Health Care Corp.,* 215 F3d 618.)

*Planned Parenthood Federation of America, Inc.,* New York City (*Eve C. Gartner* and *Jennifer Sandman* of counsel), for American Jewish Committee and others, amici curiae. I. The Appellate Division correctly ruled that the Legislature enacted the Women's Health and Wellness Act to ensure gender equity in prescription coverage in New York State. II. The Appellate Division correctly ruled that New York State has a compelling interest in prohibiting the sex discrimination caused by contraceptive exclusions. (*In re Union Pac. R.R. Empl. Practices Litig.,* 378 F Supp 2d 1139; *Erickson v Bartell Drug Co.,* 141 F Supp 2d 1266; *Equal Empl. Opportunity Commn. v United Parcel Serv., Inc.,* 141 F Supp 2d 1216; *Cooley v DaimlerChrys-*

*ler,* 281 F Supp 2d 979; *California Fed. Sav. & Loan Assn. v Guerra,* 758 F2d 390, 479 US 272; *Saks v Franklin Covey Co.,* 316 F3d 337; *Matter of Beame v DeLeon,* 87 NY2d 289; *Lawrence v Texas,* 539 US 558; *Eisenstadt v Baird,* 405 US 438; *Griswold v Connecticut,* 381 US 479.)

*Winston & Strawn LLP,* New York City and Washington, D.C. (*Piero A. Tozzi, Gene C. Schaerr* and *Steffen N. Johnson* of counsel), for Campus Crusade for Christ, Inc., and another, amici curiae. The contraceptive mandate violates article I, § 3 of the New York State Constitution and should be declared unconstitutional. (*Employment Div., Dept. of Human Resources of Ore. v Smith,* 494 US 872; *Lightman v Flaum,* 278 AD2d 373, 97 NY2d 128; *Matter of New York State Empl. Relations Bd. v Christ the King Regional High School,* 90 NY2d 244; *Matter of Miller,* 252 AD2d 156; *People v Alvarez,* 70 NY2d 375; *People v P.J. Video,* 68 NY2d 296; *City of Boerne v Flores,* 521 US 507; *People v Barber,* 289 NY 378; *People v Scott,* 79 NY2d 474; *O'Neill v Oakgrove Constr.,* 71 NY2d 521.)

**OPINION OF THE COURT**

R.S. SMITH, J.

Plaintiffs challenge the validity of legislation requiring health insurance policies that provide coverage for prescription drugs to include coverage for contraception. Plaintiffs assert that the provisions they challenge violate their rights under the religion clauses of the federal and state constitutions. We hold that the legislation, as applied to these plaintiffs, is valid.

## The Challenged Legislation

In 2002, the Legislature enacted what is known as the "Women's Health and Wellness Act" (WHWA), mandating expanded health insurance coverage for a variety of services needed by women, including mammography, cervical cytology and bone density screening (L 2002, ch 554). At issue here are provisions of the WHWA requiring that an employer health insurance contract "which provides coverage for prescription drugs shall include coverage for the cost of contraceptive drugs or devices" (Insurance Law § 3221 [*l*] [16]; § 4303 [cc]).

The legislative history makes clear that the WHWA in general, and the provisions relating to contraception in particular, were designed to advance both women's health and the equal treatment of men and women. The Legislature was provided with extensive information showing the need for the legislation.

For example, the Legislature had before it a study showing that women paid 68% more than men in out-of-pocket expenses for health care, and that the cost of reproductive health services was a primary reason for the discrepancy. The American College of Obstetricians and Gynecologists advised the Legislature that better access to contraception would mean fewer abortions and unplanned pregnancies, and that the ability to time and space pregnancies was important to women's health. These conclusions are supported by studies contained in the record of this litigation, showing among other things that unintended pregnancies are often associated with delayed prenatal care; that such conditions as diabetes, hypertension, arthritis and coronary artery disease can be aggravated by pregnancy; that children born from unintended pregnancies are at risk of low birth weight and developmental problems; and that there are 3 million unintended pregnancies in the United States each year, of which approximately half end in abortion.

At the heart of this case is the statute's exemption for "religious employers." Such an employer may request an insurance contract "without coverage for . . . contraceptive methods that are contrary to the religious employer's religious tenets" (Insurance Law § 3221 [*l*] [16] [A]; § 4303 [cc] [1]). Where a religious employer invokes the exemption, the insurer must offer coverage for contraception to individual employees, who may purchase it at their own expense "at the prevailing small group community rate" (Insurance Law § 3221 [*l*] [16] [B] [i]; § 4303 [cc] [2] [A]). A "religious employer," as defined in the statute, is:

> "an entity for which each of the following is true:
>
> "(a) The inculcation of religious values is the purpose of the entity.
>
> "(b) The entity primarily employs persons who share the religious tenets of the entity.
>
> "(c) The entity serves primarily persons who share the religious tenets of the entity.
>
> "(d) The entity is a nonprofit organization as described in Section 6033 (a) (2) (A) i or iii, of the Internal Revenue Code of 1986, as amended." (Insurance Law § 3221 [*l*] [16] [A] [1]; *see* § 4303 [cc] [1] [A] [i]-[iv].)

Plaintiffs say that this definition is unconstitutionally narrow.

The Legislature debated the scope of the "religious employer" exemption intensely before the WHWA was passed. A broader exemption was proposed, one that would have been available to any "group or entity . . . supervised or controlled by or in connection with a religious organization or denominational group or entity" (2001 NY Senate Bill S 3, § 14). Supporters of this version of the exemption argued, as do plaintiffs here, that religious organizations should not be forced to violate the commands of their faith. Those favoring a narrower exemption asserted that the broader one would deprive tens of thousands of women employed by church-affiliated organizations of contraceptive coverage. Their view prevailed.

### This Action

Plaintiffs are 10 faith-based social service organizations that object to the contraceptive coverage mandate in the WHWA. Eight plaintiffs are affiliated in some way with the Roman Catholic Church: of these, three are large entities that provide a variety of social services, including immigrant resettlement programs, affordable housing programs, job development services, and domestic violence shelters; three primarily operate health care facilities, such as hospice centers, nursing homes and rehabilitative care facilities; and two operate schools. The other two plaintiffs are affiliated with the Baptist Bible Fellowship International: one of them offers a variety of social services to the public, including prison ministry, crisis pregnancy centers, job placement and homeless services; the other operates a K-12 school and provides day-care, preschool and youth services.

None of the plaintiffs qualifies as a "religious employer" under the WHWA. This is essentially because plaintiffs are not, or are not only, churches ministering to the faithful, but are providers of social and educational services. Each of the plaintiffs asserts that its purpose is not, or is not only, the inculcation of religious values; most of the plaintiffs acknowledge that they employ many people not of their faiths; all of the plaintiffs serve people not of their faiths; and only three of the plaintiffs are exempt from filing tax returns under Internal Revenue Code (26 USC) § 6033 (a) (2) (A) (i) or (iii) (now § 6033 [a] [3] [A] [i] or [iii]), provisions applicable to churches and religious orders.

Plaintiffs believe contraception to be sinful, and assert that the challenged provisions of the WHWA compel them to violate

their religious tenets by financing conduct that they condemn. The sincerity of their beliefs, and the centrality of those beliefs to their faiths, are not in dispute.

Contending that they are constitutionally entitled to be exempt from the provisions of the WHWA providing for coverage of contraceptives, plaintiffs brought this action against the Superintendent of Insurance, seeking a declaration that these portions of the WHWA are invalid, and an injunction against their enforcement. The complaint asserts broadly that the challenged provisions are unconstitutional, but plaintiffs do not argue that they are unenforceable as to employers having no religious objections to contraception; in substance, plaintiffs challenge the legislation as applied to them. Supreme Court rejected the challenge, and granted summary judgment dismissing plaintiffs' complaint and declaring the legislation valid. The Appellate Division affirmed, with two Justices dissenting. We now affirm.

## Discussion

Plaintiffs argue that the provisions of the WHWA requiring coverage of contraception violate the Free Exercise clauses of the New York and United States constitutions, and the Establishment Clause of the United States Constitution. Plaintiffs' strongest claim is under the New York Free Exercise Clause, but our analysis of that claim may be clearer if we discuss the federal Free Exercise Clause first.

## I

The First Amendment to the United States Constitution provides that "Congress shall make no law respecting an establishment of religion, or prohibiting the free exercise thereof." By virtue of the Fourteenth Amendment, this provision is binding on the states as well as the federal government (*Cantwell v Connecticut*, 310 US 296, 303 [1940]).

The United States Supreme Court's decision in *Employment Div., Dept. of Human Resources of Ore. v Smith* (494 US 872 [1990]) bars plaintiffs' federal free exercise claim. In *Smith*, the Court interpreted its First Amendment decisions as holding "that the right of free exercise does not relieve an individual of the obligation to comply with a 'valid and neutral law of general applicability on the ground that the law proscribes (or prescribes) conduct that his religion prescribes (or proscribes)'" (*id.* at 879, quoting *United States v Lee*, 455 US 252, 263 n 3

[1982, Stevens, J., concurring]). The Court held that where a prohibition on the exercise of religion "is not the object . . . but merely the incidental effect of a generally applicable and otherwise valid provision, the First Amendment has not been offended" (494 US at 878).

By that test, the First Amendment has not been offended here. The burden on plaintiffs' religious exercise is the incidental result of a "neutral law of general applicability," one requiring health insurance policies that include coverage for prescription drugs to include coverage for contraception. A "neutral" law, the Supreme Court has explained, is one that does not "target[ ] religious beliefs as such" or have as its "object . . . to infringe upon or restrict practices because of their religious motivation" (*Church of Lukumi Babalu Aye, Inc. v Hialeah*, 508 US 520, 533 [1993]). Religious beliefs were not the "target" of the WHWA, and it was plainly not that law's "object" to interfere with plaintiffs' or anyone's exercise of religion. Its object was to make broader health insurance coverage available to women and, by that means, both to improve women's health and to eliminate disparities between men and women in the cost of health care.

The fact that some religious organizations—in general, churches and religious orders that limit their activities to inculcating religious values in people of their own faith—are exempt from the WHWA's provisions on contraception does not, as plaintiffs claim, demonstrate that these provisions are not "neutral." The neutral purpose of the challenged portions of the WHWA—to make contraceptive coverage broadly available to New York women—is not altered because the Legislature chose to exempt some religious institutions and not others. To hold that any religious exemption that is not all-inclusive renders a statute non-neutral would be to discourage the enactment of any such exemptions—and thus to restrict, rather than promote, freedom of religion. As the California Supreme Court explained, in a decision upholding a statute nearly identical to the WHWA:

> "The high court has never prohibited statutory references to religion for the purpose of accommodating religious practice. To the contrary, the court has repeatedly indicated that 'it is a permissible legislative purpose to alleviate significant governmental interference with the ability of religious organiza-

tions to define and carry out their religious missions' " (*Catholic Charities of Sacramento, Inc. v Superior Ct.*, 32 Cal 4th 527, 551, 85 P3d 67, 83 [2004], quoting *Corporation of Presiding Bishop of Church of Jesus Christ of Latter-day Saints v Amos*, 483 US 327, 335 [1987]).

■ Nor can plaintiffs escape the force of the Supreme Court's decision in *Smith* by relying on the so-called "hybrid rights" exception. The notion of "hybrid rights" is derived from a dictum in which the *Smith* court distinguished certain of its previous cases by saying:

> "The only decisions in which we have held that the First Amendment bars application of a neutral, generally applicable law to religiously motivated action have involved not the Free Exercise Clause alone, but the Free Exercise Clause in conjunction with other constitutional protections, such as freedom of speech and of the press, or the rights of parents . . . to direct the education of their children" (494 US at 881 [citations omitted]).

Assuming that the above language does create an exception to the general rule of *Smith*, the exception does not apply here, for this is not a case that involves free exercise "in conjunction with other constitutional protections." Plaintiffs claim that the challenged legislation interferes with their rights of free speech and association, but the claim is insubstantial. The legislation does not interfere with plaintiffs' right to communicate, or to refrain from communicating, any message they like; nor does it compel them to associate, or prohibit them from associating, with anyone (*see Rumsfeld v Forum for Academic and Institutional Rights, Inc.*, 547 US 47, —, 126 S Ct 1297, 1309-1313 [2006]). It does burden their exercise of religion—but that alone, under *Smith*, cannot call the validity of a generally applicable and neutral statute into question.

■ Plaintiffs also suggest that an exception to the holding of *Smith* can be derived from the doctrine of church autonomy, which prevents states from interfering in matters of internal church governance (*Serbian Eastern Orthodox Diocese for United States and Canada v Milivojevich*, 426 US 696, 709-710 [1976]; *Kedroff v Saint Nicholas Cathedral of Russian Orthodox Church of North America*, 344 US 94, 107-108 [1952]) or determining ecclesiastical questions (*Presbyterian Church in U. S. v Mary Elizabeth Blue Hull Memorial Presbyterian Church*,

393 US 440, 447 [1969]). But church autonomy is not at issue in this case. The Legislature has not attempted through the WHWA to "lend its power to one or the other side in controversies over religious authority or dogma" (*Employment Div. v Smith*, 494 US at 877, citing *Presbyterian Church*, 393 US at 445-452, *Kedroff*, 344 US at 95-119, and *Serbian Eastern Orthodox Diocese*, 426 US at 708-725). The WHWA merely regulates one aspect of the relationship between plaintiffs and their employees.

Relying on the church autonomy cases, some lower federal courts have recognized a "ministerial exception" which exempts religious institutions from complying with title VII of the Civil Rights Act with respect to their ministers (*see e.g. Equal Empl. Opportunity Commn. v Roman Catholic Diocese of Raleigh, N.C.*, 213 F3d 795, 800 [4th Cir 2000]; *Alicea-Hernandez v Catholic Bishop of Chicago*, 320 F3d 698, 702-703 [7th Cir 2003]). But the ministerial exception has no bearing here; this case does not involve the right of a church to determine who it will employ to carry out its religious mission. The existence of a limited exemption for ministers from antidiscrimination laws does not translate into an absolute right for a religiously-affiliated employer to structure all aspects of its relationship with its employees in conformity with church teachings. The ministerial exception has been applied only to employment discrimination claims, and only to "ministers," broadly defined. This case involves neither.

In short, no exception to *Smith* is applicable in this case. *Smith* is an insuperable obstacle to plaintiffs' federal free exercise claim.

II

Article I, § 3 of the New York Constitution provides:

> "The free exercise and enjoyment of religious profession and worship, without discrimination or preference, shall forever be allowed in this state to all humankind; and no person shall be rendered incompetent to be a witness on account of his or her opinions on matters of religious belief; but the liberty of conscience hereby secured shall not be so construed as to excuse acts of licentiousness, or justify practices inconsistent with the peace or safety of this state."

■ In interpreting our Free Exercise Clause we have not applied, and we do not now adopt, the inflexible rule of *Smith* that no person may complain of a burden on religious exercise that is imposed by a generally applicable, neutral statute. Rather, we have held that when the State imposes "an incidental burden on the right to free exercise of religion" we must consider the interest advanced by the legislation that imposes the burden, and that "[t]he respective interests must be balanced to determine whether the incidental burdening is justified" (*La Rocca v Lane*, 37 NY2d 575, 583 [1975], citing *People v Woodruff*, 26 AD2d 236, 238 [1966], *affd* 21 NY2d 848 [1968]). We have never discussed, however, how the balancing is to be performed. Specifically, we have not said how much, if any, deference we will give to the judgments of the Legislature when the result of those judgments is to burden the exercise of religion. We now hold that substantial deference is due the Legislature, and that the party claiming an exemption bears the burden of showing that the challenged legislation, as applied to that party, is an unreasonable interference with religious freedom. This test, while more protective of religious exercise than the rule of *Smith*, is less so than the rule stated (though not always applied) in a number of other federal and state cases.

Before *Smith*, the leading United States Supreme Court case involving burdens imposed on religious exercise by generally applicable laws was *Sherbert v Verner*, in which the Court held that justification of "any incidental burden on the free exercise of . . . religion" requires "a 'compelling state interest in the regulation of a subject within the State's constitutional power to regulate'" (374 US 398, 403 [1963], quoting *NAACP v Button*, 371 US 415, 438 [1963]). This test has been characterized as "strict scrutiny" (*e.g.*, *Catholic Charities of Sacramento*, 32 Cal 4th at 548, 85 P3d at 81), and it might be thought that few laws would pass the test. However, after upholding a claim of free exercise against a neutral and generally applicable statute in *Wisconsin v Yoder* (406 US 205 [1972]), the Supreme Court "rejected every claim for a free exercise exemption to come before it" for 18 years (McConnell, *The Origins and Historical Understanding of Free Exercise of Religion*, 103 Harv L Rev 1409, 1417 [1990]). During that period, many thought the Court's claim to be applying strict scrutiny—a claim finally abandoned when *Smith* was decided in 1990—less than convincing (*e.g.*, *United States v Lee*, 455 US 252, 262-263 [1982, Stevens, J., concurring]).

Since *Smith*, a number of state courts have interpreted their states' constitutions to call for the application of strict scrutiny (*e.g.*, *Smith v Fair Empl. & Hous. Commn.*, 12 Cal 4th 1143, 913 P2d 909 [1996]; *Swanner v Anchorage Equal Rights Commn.*, 874 P2d 274 [Alaska 1994]; *Attorney Gen. v Desilets*, 418 Mass 316, 636 NE2d 233 [1994]). Often, however, as in the California and Alaska cases just cited, the courts rejected claims to religious exemptions, and it is questionable whether the scrutiny applied by those courts is really as strict as their statement of the rule implies. Justice Brown of the California Supreme Court, dissenting in *Catholic Charities of Sacramento* (32 Cal 4th at 583, 85 P3d at 105), remarked:

> "Strict scrutiny is not what it once was. Described in the past as 'strict in theory and fatal in fact' (Gunther, *Foreword: In Search of Evolving Doctrine on a Changing Court: A Model for Newer Equal Protection* (1972) 86 Harv. L. Rev. 1, 8), it has mellowed in recent decades . . . .

> "If recent precedent is any guide, a state's interest is compelling if the state says it is."

The apparent reluctance of some courts to pay more than lip service to "strict scrutiny" may be an implicit recognition of what we now explicitly decide: Strict scrutiny is not the right approach to constitutionally-based claims for religious exemptions. Where the State has not set out to burden religious exercise, but seeks only to advance, in a neutral way, a legitimate object of legislation, we do not read the New York Free Exercise Clause to require the State to demonstrate a "compelling" interest in response to every claim by a religious believer to an exemption from the law; such a rule of constitutional law would give too little respect to legislative prerogatives, and would create too great an obstacle to efficient government. Rather, the principle stated by the United States Supreme Court in *Smith*—that citizens are not excused by the Free Exercise Clause from complying with generally applicable and neutral laws, even ones offensive to their religious tenets—should be the usual, though not the invariable, rule. The burden of showing that an interference with religious practice is unreasonable, and therefore requires an exemption from the statute, must be on the person claiming the exemption.

The burden, however, should not be impossible to overcome. As Professor (now Judge) McConnell has pointed out, a rule

that the Constitution never requires a religious exemption from generally applicable laws could lead to results plainly inconsistent with basic ideas of religious freedom:

> "Under the no-exemptions view . . . religious believers and institutions cannot challenge facially neutral legislation, no matter what effect it may have on their ability or freedom to practice their religious faith. Thus, a requirement that all witnesses must testify to facts within their knowledge bearing on a criminal prosecution . . . if applied without exception, could abrogate the confidentiality of the confessional. Similarly, a general prohibition of alcohol consumption could make the Christian sacrament of communion illegal, uniform regulation of meat preparation could put kosher slaughterhouses out of business, and prohibitions of discrimination on the basis of sex or marital status could end the male celibate priesthood." (*The Origins and Historical Understanding of Free Exercise of Religion*, 103 Harv L Rev at 1418-1419.)

We find these hypothetical laws to be well beyond the bounds of constitutional acceptability. And we by no means exclude the possibility that, even in much less extreme cases, parties claiming an exemption from generally applicable and neutral laws will be able to show that the State has interfered unreasonably with their right to practice their religion. We conclude, however, that plaintiffs here fall short of making such a showing.

The burden the WHWA places on plaintiffs' religious practices is a serious one, but the WHWA does not literally *compel* them to purchase contraceptive coverage for their employees, in violation of their religious beliefs; it only requires that policies that provide prescription drug coverage include coverage for contraceptives. Plaintiffs are not required by law to purchase prescription drug coverage at all. They assert, unquestionably in good faith, that they feel obliged to do so because, as religious institutions, they must provide just wages and benefits to their employees. But it is surely not impossible, though it may be expensive or difficult, to compensate employees adequately without including prescription drugs in their group health care policies.

It is also important, in our view, that many of plaintiffs' employees do not share their religious beliefs. (Most of the plaintiffs allege that they hire many people of other faiths; no

plaintiff has presented evidence that it does not do so.) The employment relationship is a frequent subject of legislation, and when a religious organization chooses to hire nonbelievers it must, at least to some degree, be prepared to accept neutral regulations imposed to protect those employees' legitimate interests in doing what their own beliefs permit. This would be a more difficult case if plaintiffs had chosen to hire only people who share their belief in the sinfulness of contraception.

Finally, we must weigh against plaintiffs' interest in adhering to the tenets of their faith the State's substantial interest in fostering equality between the sexes, and in providing women with better health care. The Legislature had extensive evidence before it that the absence of contraceptive coverage for many women was seriously interfering with both of these important goals. The Legislature decided that to grant the broad religious exemption that plaintiffs seek would leave too many women outside the statute, a decision entitled to deference from the courts. Of course, the Legislature might well have made another choice, but we cannot say the choice the Legislature made has been shown to be an unreasonable interference with plaintiffs' exercise of their religion. The Legislature's choice is therefore not unconstitutional.

## III

■ Plaintiffs' final claim is that the challenged sections of the WHWA violate the Establishment Clause of the Federal Constitution. We find this claim to be without merit.

The claim rests essentially on a misreading of a single United States Supreme Court case, *Larson v Valente* (456 US 228 [1982]). *Larson* held that the Establishment Clause was violated by a statute designed to exempt from certain regulatory requirements all religious faiths except a disfavored one, the Unification Church. The Court found the statute to violate the Establishment Clause's "clearest command": "that one religious denomination cannot be officially preferred over another" (*id.* at 244). Nothing of the kind has happened in this case. It cannot be convincingly argued that the WHWA was designed to favor or disfavor Catholics, Baptists or any other religion. The statute is, as we explained above, generally applicable and neutral between religions.

Plaintiffs contend that the legislation is invalid under *Larson* because it distinguishes between religious organizations that are exempt from the contraception requirements and those that

are not. But this kind of distinction—not between denominations, but between religious organizations based on the nature of their activities—is not what *Larson* condemns. Plaintiffs' theory would call into question any limitations placed by the Legislature on the scope of any religious exemption—and thus would discourage the Legislature from creating any such exemptions at all. But, as we pointed out above, legislative accommodation to religious believers is a long-standing practice completely consistent with First Amendment principles. A legislative decision not to extend an accommodation to all kinds of religious organizations does not violate the Establishment Clause.

## IV

Accordingly, the order of the Appellate Division should be affirmed, with costs.

Chief Judge KAYE and Judges CIPARICK, ROSENBLATT, GRAFFEO and READ concur; Judge PIGOTT taking no part.

Order affirmed, with costs.