OPINION OF THE COURT
Peters, P.J.
Proceedings pursuant to Executive Law § 298 (transferred to this Court by order of the Supreme Court, entered in Rensselaer County) to, among other things, review a determination of respondent State Division of Human Rights finding petitioners guilty of an unlawful discriminatory practice based upon sexual orientation.
Petitioners Cynthia Gifford and Robert Gifford own and operate petitioner Liberty Ridge Farm, LLC, a nearly 100-acre property located in the Town of Schaghticoke, Rensselaer County. Registered as a limited liability corporation, Liberty Ridge is not a member organization, a non-profit organization or a religious entity. In addition to harvesting and selling various crops to the public, Liberty Ridge rents portions of the farm to the public as a venue for, among other things, wedding ceremonies and receptions. It hosts both religious and secular wedding ceremonies on the farm. When providing a venue site, Liberty Ridge offers several wedding-related event services, including transportation of guests within the premises, a light beverage station, decoration and set-up services, flower arrangements and event coordination. Such services are provided primarily by the Giffords themselves, particularly Cynthia Gif *34 ford, who serves as the “event coordinator.”[1] Liberty Ridge also offers food and beverages for wedding receptions through a catering contract and employs catering, kitchen and wait staff for that purpose.
In October 2011, respondents Melisa McCarthy and Jennifer McCarthy—a same-sex couple—became engaged to be married. Approximately a year later, Melisa McCarthy spoke with Cynthia Gifford on the telephone concerning Liberty Ridge as a venue for her wedding ceremony and reception. During their conversation, Melisa McCarthy used the female pronoun to refer to her fiancée, thus indicating that she was engaged to a woman. Cynthia Gifford promptly interjected that there was “a problem” and that the farm did “not hold same[-] sex marriages.” In response to Melisa McCarthy’s query as to the reason for not allowing same-sex marriages, Cynthia Gifford explained that “it’s a decision that my husband and I have made that that’s not what we wanted to have on the farm.”
The McCarthys thereafter filed complaints and amended complaints with respondent State Division of Human Rights (hereinafter SDHR) alleging that petitioners engaged in unlawful discriminatory practices based on sexual orientation. After an investigation, SDHR determined that it had jurisdiction over the matters and that probable cause existed to support the complaints. Following a public hearing, an Administrative Law Judge (hereinafter ALJ) found that Liberty Ridge is a place of public accommodation within the meaning of the Human Rights Law and that petitioners illegally discriminated against the McCarthys on the basis of their sexual orientation. The ALJ recommended that the McCarthys each be awarded $1,500 in compensatory damages for the emotional injuries they suffered as a result of the discrimination, that a civil fine and penalty in the amount of $10,000 be imposed upon petitioners and that petitioners be directed to cease and desist from engaging in discriminatory practices and establish anti-discrimination training and procedures at the farm. The Commissioner of Human Rights adopted the ALJ’s findings and recommendations with minor changes not relevant here. Petitioners then commenced this proceeding pursuant to Executive Law § 298 to annul SDHR’s determination on various statutory and constitutional grounds, and SDHR cross-petitioned for, among other things, enforcement of its determi *35 nation. The proceeding was subsequently transferred to this Court.
I. State Law Issues
The Human Rights Law was enacted “to assure that every individual within this state is afforded an equal opportunity to enjoy a full and productive life” by “eliminating] and preventing] discrimination in employment, in places of public accommodation, resort or amusement, in educational institutions, in public services, in housing accommodations, in commercial space and in credit transactions” (Executive Law § 290 [3]). To accomplish these goals, the Human Rights Law declares it an “unlawful discriminatory practice” for any “owner, lessee, proprietor, manager, superintendent, agent or employee of any place of public accommodation, resort or amusement, because of the . . . sexual orientation ... of any person, directly or indirectly, to refuse, withhold from or deny to such person any of the accommodations, advantages, facilities or privileges thereof” (Executive Law § 296 [2] [a]).[2]
Petitioners challenge SDHR’s determination that they violated the Human Rights Law on two distinct grounds. First, they assert that they are not subject to the provisions of the Human Rights Law because Liberty Ridge’s wedding facilities do not constitute a “place of public accommodation” within the meaning of the statute. Petitioners also claim that, even if they are within the proscription of the statute, substantial evidence does not support the conclusion that they engaged in unlawful discrimination on the basis of sexual orientation.
Executive Law § 292 (9) “defines ‘place of public accommodation, resort or amusement’ inclusively and illustratively, not specifically, and sets forth an extensive list of examples of places within the statute” (Matter of United States Power Squadrons v State Human Rights Appeal Bd., 59 NY2d 401, 409 [1983]; see New York State Club Assn. v City of New York, 69 NY2d 211, 218 [1987], affd 487 US 1 [1988]). Such term includes “establishments dealing with goods or services of any kind” and “any place where food is sold for consumption on the premises” (Executive Law § 292 [9]). Over the years, the statutory definition has been expanded repeatedly, “providing] a clear indication that the Legislature used the phrase place of *36 public accommodation ‘in the broad sense of providing conveniences and services to the public’ and that it intended that the definition of place of accommodation should be interpreted liberally” (Matter of Cahill v Rosa, 89 NY2d 14, 21 [1996], quoting Matter of United States Power Squadrons v State Human Rights Appeal Bd., 59 NY2d at 410; see generally Executive Law § 300).
Here, Liberty Ridge’s wedding facilities fall comfortably within the broad definition of “place of public accommodation.” It is undisputed that petitioners open Liberty Ridge to the public as a venue for wedding ceremonies and receptions and offer several wedding-related event services in connection therewith. Indeed, the only wedding-related service that Liberty Ridge does not provide is an officiant for the wedding ceremony. The couples who contract to wed at Liberty Ridge’s facilities are members of the general public who, like the Mc-Carthys, may be attracted to the farm by its broadly disseminated advertisements and website. The fact that the wedding ceremonies occur on private property and pursuant to written contracts does not, as petitioners contend, remove Liberty Ridge’s facilities from the reach of the Human Rights Law; the critical factor is that the facilities are made available to the public at large (see Matter of Cahill v Rosa, 89 NY2d at 21-23; Matter of Mill Riv. Club, Inc. v New York State Div. of Human Rights, 59 AD3d 549, 554-555 [2009], appeal dismissed 12 NY3d 871 [2009], lv denied 13 NY3d 705 [2009]). Thus, SDHR properly determined that petitioners were subject to the Human Rights Law.
Addressing petitioners’ challenge to SDHR’s substantive determination that they engaged in unlawful discrimination on the basis of sexual orientation, it is settled that the “extremely narrow” scope of our review is limited to a consideration of whether the determination is supported by substantial evidence (Matter of State Div. of Human Rights [Granelle], 70 NY2d 100, 106 [1987]). In such an analysis, we may not weigh the evidence or substitute our judgment for that of SDHR even where “the evidence is conflicting and room for choice exists” (id.; see Rainer N. Mittl, Ophthalmologist, P.C. v New York State Div. of Human Rights, 100 NY2d 326, 330 [2003]; Matter of Arcuri v Kirkland, 113 AD3d 912, 913 [2014]). If we find a rational basis for SDHR’s conclusion, our judicial function is complete (see Matter of State Div. of Human Rights [Granelle], 70 NY2d at 106).
*37 As the record clearly reflects, Cynthia Gifford displayed no unwillingness to allow the McCarthys to marry at the farm until Melisa McCarthy referred to her fiancée as a “she.” Despite Cynthia Gifford’s clear rejection of the McCarthys as customers, petitioners nonetheless argue that, in advising Melisa McCarthy that “we do not hold same [-] sex marriages here at the farm,” they did not deny services to the McCarthys “because of” their sexual orientation (Executive Law § 296 [2] [a]). Instead, petitioners claim that the decision to do so was based solely upon the Giffords’ religious beliefs regarding same-sex marriage. Such attempts to distinguish between a protected status and conduct closely correlated with that status have been soundly rejected (see Christian Legal Soc. Chapter of Univ. of Cal., Hastings College of Law v Martinez, 561 US 661, 689 [2010]; Lawrence v Texas, 539 US 558, 575 [2003]; Bob Jones Univ. v United States, 461 US 574, 605 [1983]). The act of entering into a same-sex marriage is “conduct that is inextricably tied to sexual orientation” and, for purposes of the Human Rights Law, we hold that there is “no basis for distinguishing between discrimination based on sexual orientation and discrimination based on someone’s conduct of publicly committing to a person of the same sex” (Elane Photography, LLC v Willock, 309 P3d 53, 62 [Sup Ct NM 2013], cert denied 572 US —, 134 S Ct 1787 [2014]; accord Craig v Masterpiece Cakeshop, Inc., — P3d —, —, 2015 WL 4760453, *6, 2015 Colo App LEXIS 1217, *15-18 [2015]). Accordingly, petitioners discriminated on the basis of sexual orientation when they refused to host the McCarthys’ wedding on the premises.
Petitioners’ claim that their prohibition of same-sex wedding ceremonies on their property was narrowly drawn, and that they would “happily” host wedding receptions, parties or other events for couples in same-sex relationships, does not alter this conclusion.[3] The Human Rights Law makes it unlawful to refuse, withhold from or deny, on the account of sexual orientation, “any of the accommodations, advantages, facilities or privileges” furnished by a place of public accommodation (Executive Law § 296 [2] [a] [emphasis added]). Simply put, the statute “does not permit businesses to offer a ‘limited menu’ *38 of goods or services to customers on the basis of a status that fits within one of the protected categories” (Elane Photography, LLC v Willock, 309 P3d at 62; see Craig v Masterpiece Cakeshop, Inc., — P3d at —, 2015 WL 4760453, *7, 2015 Colo App LEXIS 1217, *20-23; Batavia Lodge No. 196, Loyal Order of Moose v New York State Div. of Human Rights, 35 NY2d 143, 145 [1974] [finding “blatant and intolerable” discrimination where black complainants were invited on the premises for a fashion show but, unlike the white attendees, were refused service at a private bar inside the event]; see also United States Power Squadrons v State Human Rights Appeal Bd., 59 NY2d at 416-417). Thus, petitioners’ purported willingness to offer some services to the McCarthy's does not cure their refusal to provide a service that was offered to the general public.
II. Constitutional Issues
A. Free Exercise
Petitioners assert that the remedy imposed upon the Giffords by SDHR violates their rights under the Free Exercise Clause of the Federal and State Constitutions. Claiming that the Giffords hold a sincere religious belief that marriage is “between one man and one woman under God,” petitioners argue that SDHR’s determination unconstitutionally compels the Giffords to “host and participate in what they consider to be a sacred event that violates their religious beliefs” and to implement anti-discrimination training and procedures that will necessarily endeavor to alter their religiously-motivated views and practices.
We turn our attention first to petitioners’ claims under the Federal Free Exercise Clause. The First Amendment of the US Constitution, which is binding on the states by virtue of the Fourteenth Amendment (see Shelton v Tucker, 364 US 479, 487 [1960]; Cantwell v Connecticut, 310 US 296, 303 [1940]), provides that “Congress shall make no law respecting an establishment of religion, or prohibiting the free exercise thereof” (US Const Amend I). However, “the right of free exercise does not relieve an individual of the obligation to comply with a ‘valid and neutral law of general applicability on the ground that the law proscribes (or prescribes) conduct that his [or her] religion prescribes (or proscribes)’ ” (Employment Div., Dept. of Human Resources of Ore. v Smith, 494 US 872, *39 879 [1990], quoting United States v Lee, 455 US 252, 263 n 3 [1982] [Stevens, J., concurring]; accord Catholic Charities of Diocese of Albany v Serio, 7 NY3d 510, 521 [2006], cert denied 552 US 816 [2007]). Thus, “a generally applicable and otherwise valid enactment, which is not intended to regulate religious conduct or beliefs but which may incidentally burden the free exercise of religion, is not deemed to violate the First Amendment” (Matter of New York State Empl. Relations Bd. v Christ the King Regional High School, 90 NY2d 244, 248 [1997]; see Employment Div., Dept. of Human Resources of Ore. v Smith, 494 US at 878-879).
The Human Rights Law does not “target [ ] religious beliefs,” nor is its objective “to infringe upon or restrict practices because of their religious motivation” (Church of Lukumi Babalu Aye, Inc. v Hialeah, 508 US 520, 533 [1993]; accord Catholic Charities of Diocese of Albany v Serio, 7 NY3d at 521). Rather, the Human Rights Law generally forbids all discrimination against a protected class in places of public accommodation regardless of the motivation. The fact that some religious organizations and educational facilities are exempt from the statute’s public accommodation provision does not, as petitioners claim, demonstrate that it is not neutral or generally applicable (see Catholic Charities of Diocese of Albany v Serio, 7 NY3d at 522). Thus, we find no violation of the Giffords’ First Amendment free exercise rights (see id.; Matter of New York State Empl. Relations Bd. v Christ the King Regional High School, 90 NY2d at 248-249; Craig v Masterpiece Cakeshop, Inc., — P3d at —, 2015 WL 4760453, *15-17, 2015 Colo App LEXIS 1217, *43-51; Elane Photography, LLC v Willock, 309 P3d at 73-75; State v Arlene’s Flowers, Inc., 2015 WL 720213, *21-22 [Wash Super Ct, Feb. 18, 2015, No. 13-2-00871-5]).
Petitioners’ claims fare no better under New York’s Free Exercise Clause. “[W]hen the State imposes ‘an incidental burden on the right to free exercise of religion [,]’ [a court] must consider the interest advanced by the legislation that imposes the burden, and . . . ‘[t]he respective interests must be balanced to determine whether the incidental burdening is justified’” (Catholic Charities of Diocese of Albany v Serio, 7 NY3d at 525, quoting La Rocca v Lane, 37 NY2d 575, 583 [1975], cert denied 424 US 968 [1976]; see People ex rel. DeMauro v Gavin, 92 NY2d 963, 964 [1998]). In conducting such a balancing test, the Legislature is accorded “substantial deference” and “the *40 party claiming an exemption bears the burden of showing that the challenged legislation, as applied to that party, is an unreasonable interference with religious freedom” (Catholic Charities of Diocese of Albany v Serio, 7 NY3d at 525).
While we recognize that the burden placed on the Giffords’ right to freely exercise their religion is not inconsequential, it cannot be overlooked that SDHR’s determination does not require them to participate in the marriage of a same-sex couple. Indeed, the Giffords are free to adhere to and profess their religious beliefs that same-sex couples should not marry, but they must permit same-sex couples to marry on the premises if they choose to allow opposite-sex couples to do so. To be weighed against the Giffords’ interests in adhering to the tenets of their faith is New York’s long-recognized, substantial interest in eradicating discrimination (see Matter of New York City Tr. Auth. v State Div. of Human Rights, 78 NY2d 207, 216 [1991] [noting the “extremely strong statutory policy of eliminating discrimination” embodied by the Human Rights Law]; Batavia Lodge No. 196, Loyal Order of Moose v New York State Div. of Human Rights, 35 NY2d at 145 [recounting a history of “strength and importance of the State’s policy in combating discrimination”]; Matter of Mill Riv. Club, Inc. v New York State Div. of Human Rights, 59 AD3d at 555 [citing the “compelling state interest in preventing discrimination”]). Discriminatory denial of equal access to goods, services and other advantages made available to the public not only “deprives persons of their individual dignity,” but also “denies society the benefits of wide participation in political, economic, and cultural life” (Roberts v United States Jaycees, 468 US 609, 625 [1984]). Assuring the citizens of New York “equal access to publicly available goods and services [thus] plainly serves compelling state interests of the highest order” {id. at 624 [citation omitted]). Balancing these competing interests, we conclude that petitioners failed to show that SDHR’s determination constituted an unreasonable interference with the Giffords’ religious freedom.
B. Free Speech
Petitioners also assert that, by directing them to cease and desist from their practice of prohibiting same-sex marriage ceremonies at the farm, SDHR’s determination violates the free speech rights guaranteed to them by both the Federal and State Constitutions. Invoking both the prohibition against *41 compelled speech and the right of expressive association, petitioners maintain that wedding ceremonies are “inherently expressive event [s]” and that, by hosting a same-sex ceremony on the farm, the Giffords would effectively be communicating and endorsing messages about marriage that are antithetical to their religious views on the issue. For the reasons that follow, we conclude that the asserted free speech protections have not been transgressed here.
1. Compelled Speech
The First Amendment of the US Constitution guarantees that “Congress shall make no law . . . abridging the freedom of speech.” This constitutional protection extends to “the right to refrain from speaking” (Wooley v Maynard, 430 US 705, 714 [1977]), as well as the right to be free from government-compelled speech or conduct (see Rumsfeld v Forum for Academic & Institutional Rights, Inc., 547 US 47, 61 [2006]; West Virginia Bd. of Ed. v Barnette, 319 US 624, 642 [1943]). Thus, the government may not require an individual to personally speak a governmental message or require an individual “to host or accommodate another speaker’s message” (Rumsfeld v Forum for Academic & Institutional Rights, Inc., 547 US at 63; see Wooley v Maynard, 430 US at 715-717). In assessing a claim of compelled expressive conduct, the threshold inquiry is whether the conduct allegedly compelled was sufficiently expressive so as to trigger the protections of the First Amendment (see Clark v Community for Creative Non-Violence, 468 US 288, 293 n 5 [1984]; Catholic Charities of Diocese of Albany v Serio, 28 AD3d 115, 129 [2006], affd 7 NY3d 510 [2006]). Conduct is considered inherently expressive when there is “ ‘[a]n intent to convey a particularized message’ ” and there is a likelihood that the intended “ ‘message [will] be understood by those who view[ ] it’ ” (Texas v Johnson, 491 US 397, 404 [1989], quoting Spence v Washington, 418 US 405, 410-411 [1974]).
Here, SDHR’s determination does not compel the Giffords to endorse, espouse or promote same-sex marriages, nor does it require them to recite or display any message at all. The Giffords remain free to express whatever views they may have on the issue of same-sex marriage. The determination simply requires them to abide by the law and offer the same goods and services to same-sex couples that they offer to other couples. Despite the Giffords’ assertion that their direct *42 participation in same-sex wedding ceremonies would “broadcast to all who pass by the Farm” their support for same-sex marriage, reasonable observers would not perceive the Giffords’ provision of a venue and services for a same-sex wedding ceremony as an endorsement of same-sex marriage. Like all other owners of public accommodations who provide services to the general public, the Giffords must comply with the statutory mandate prohibiting discrimination against customers on the basis of sexual orientation or any other protected characteristic. Under such circumstances, there is no real likelihood that the Giffords would be perceived as endorsing the values or lifestyle of the individuals renting their facilities as opposed to merely complying with anti-discrimination laws. We thus conclude that the conduct allegedly compelled is not sufficiently expressive so as to trigger First Amendment protections (see Craig v Masterpiece Cakeshop, Inc., — P3d at —, 2015 WL 4760453, *11-12, 2015 Colo App LEXIS 1217, *31-38; Elane Photography, LLC v Willock, 309 P3d at 64-70; see also Catholic Charities of Diocese of Albany v Serio, 28 AD3d at 129-130).
2. Expressive Association
Petitioners’ freedom of expressive association claim must also fail. To invoke the First Amendment’s protection for expressive association, “a group must engage in some form of expression, whether it be public or private” (Boy Scouts of America v Dale, 530 US 640, 648 [2000]; see Hurley v Irish-American Gay, Lesbian & Bisexual Group of Boston, Inc., 515 US 557, 567-569 [1995]). There is nothing in this record to indicate that petitioners’ wedding business was “organized for specific expressive purposes” (New York State Club Assn., Inc. v City of New York, 487 US 1, 13 [1988]), rather than for the purpose of making a profit through service contracts with customers. Indeed, the Giffords do not inquire into a couple’s faith, religious beliefs or political views when booking weddings. Even were Liberty Ridge to be deemed an expressive enterprise, a customer’s association with a business for the limited purposes of obtaining goods and services—as opposed to becoming part of the business itself—does not trigger this constitutional concern (see Rumsfeld v Forum for Academic & Institutional Rights, Inc., 547 US at 69).
III. Compensatory Damages and Civil Penalty
Finally, we find no basis upon which to disturb either the compensatory damages award or the civil fine assessed by *43 SDHR. An award of compensatory damages will be upheld where it is reasonably related to the wrongdoing, supported by the evidence and comparable to the relief awarded in similar cases (see Matter of New York City Tr. Auth. v State Div. of Human Rights, 78 NY2d at 219; Matter of Rensselaer County Sheriffs Dept. v New York State Div. of Human Rights, 131 AD3d 777, 781 [2015]; Matter of County of Onondaga v Mayock, 78 AD3d 1632, 1633-1634 [2010]). Here, the McCarthys were the victims of discrimination based- on their sexual orientation, and the record reflects the hurt, humiliation and mental anguish that they suffered as a result of petitioners’ conduct. Further, the awards of $1,500 to each of the McCarthys are well in accord with those sustained in similar cases (see Matter of Consolidated Edison Co. of N.Y. v New York State Div. of Human Rights, 77 NY2d 411, 421 [1991]; Matter of All Is. Airport Servs., Inc. v New York State Div. of Human Rights, 127 AD3d 967, 968 [2015]; Matter of Wal-Mart Stores E., L.P. v New York State Div. of Human Rights, 71 AD3d 1452, 1453 [2010]; Albunio v City of New York, 67 AD3d 407, 409 [2009], affd 16 NY3d 472 [2011]). Mindful that SDHR has been empowered to take appropriate action to fulfill “the extremely strong statutory policy of eliminating discrimination” (Matter of New York City Tr. Auth. v State Div. of Human Rights, 78 NY2d at 216), we further find that the $10,000 civil fine imposed upon petitioners did not constitute an abuse of discretion as a matter of law (see Executive Law § 297 [4] [c] [vi]; Matter of County of Erie v New York State Div. of Human Rights, 121 AD3d 1564, 1566 [2014]; Matter of New York State Div. of Human Rights v Stennett, 98 AD3d 512, 514 [2012]; see generally Matter of Kelly v Safir, 96 NY2d 32, 38 [2001]).
McCarthy, Egan Jr., Devine and Clajrk, JJ., concur.
Adjudged that the determination is confirmed, without costs, petition dismissed and cross petition granted.

. The Giffords also serve as personal assistants to the bride, “right down to fluffing her dress before she walks down the aisle.”

. “Sexual orientation” is defined as “heterosexuality, homosexuality, bisexuality or asexuality, whether actual or perceived” (Executive Law § 292 [27]).

. We note, initially, that no such distinction was ever communicated to the McCarthys. To the contrary, Cynthia Gifford blanketly declared during the telephone conversation that she and her husband did not hold same-sex marriages at Liberty Ridge and, even when questioned as to the basis for the policy, did not clarify that the policy referred only to the marriage ceremony.