Colorado Court of Appeals Opinions || August 13, 2015


Colorado Court of Appeals -- August 13, 2015
2015 COA 115. No. 14CA1351. Craig v. Masterpiece Cakeshop, Inc.



 Â 

 
 
 
 COLORADO COURT OF APPEALS

 
 2015 COA 115

 
 



 Court of Appeals No. 14CA1351
 Colorado Civil Rights Commission CR 2013-0008


 Charlie Craig and David Mullins,

 Petitioners-Appellees,

 v.

 Masterpiece Cakeshop, Inc., and any successor entity, and Jack C. Phillips,

 Respondents-Appellants,

 and

 Colorado Civil Rights Commission,

 Appellee.


 ORDER AFFIRMED

 Division I
 Opinion by JUDGE TAUBMAN
 Loeb, C.J., and Berger, J., concur

 Announced August 13, 2015


 King & Greisen, LLP, Paula Greisen, Denver, Colorado; Mark Silverstein, Sara R. Neel, Denver, Colorado; Ria Tabacco Mar, New York, New York, for Petitioners-Appellees

 Jeremy D. Tedesco, Scottsdale, Arizona; Michael J. Norton, Natalie L. Decker, Greenwood Village, Colorado; Nicolle H. Martin, Lakewood, Colorado, for Respondents-Appellants

 Cynthia H. Coffman, Attorney General, Stacy L. Worthington, Senior Assistant Attorney General, Denver, Colorado, for Appellee

 Arnold & Porter LLP, Thomas W. Stoever, Jr., Holly A. Sterrett, Denver, Colorado, for Amicus Curiae National Center for Lesbian Rights

 
 Â 

 Ayesha N. Khan, Washington, D.C.; for Amicus Curiae Americans United for Separation of Church and State and Freedom From Religion Foundation

 Wheeler Trigg OâDonnell, LLP, Craig R. May, Denver, Colorado, for Amicus Curiae Main Street Alliance, Hopscotch Bakery, and Garyâs Auto Service; Mayer Brown LLP, Alex O. Kardon, Hannah Y.S. Chanoine, Rory K. Schneider, New York, New York; Mayer Brown, LLP, Richard B. Katskee, Washington, D.C.

 Hogan Lovells US LLP, Andrew C. Lillie, Jessica Black Livingston, Denver, Colorado, for Amici Curiae National Council of Jewish Women; Nehirim; People for the American Way Foundation; Reconciling Works; Lutherans For Full Participation; Reconstructionist Rabbinical College and Jewish Reconstructionist Communities; Religious Institute, Inc.; Sikh American Legal Defense and Education Fund; Anti-Defamation League; Bend the Arc: A Jewish Partnership for Justice; Central Conference of American Rabbis; Global Justice Institute; Hadassah, Womenâs Zionist Organization of America; Japanese American Citizens League; Keshet; Metropolitan Community Churches; More Light Presbyterians; Târuah: The Rabbinic Call for Human Rights; Union for Reform Judaism; Women of Reform Judaism; and Womenâs League for Conservative Judaism

 Brownstein, Hyatt, Farber & Schreck, LLP, John V. McDermott, Richard B. Benenson, Lauren E. Schmidt, Denver, Colorado, for Amicus Curiae NAACP Legal Defense and Educational Fund, Inc.

 Reilly Pozner LLP, John M. McHugh, Anthony L. Giacomini, Denver, Colorado, for Amicus Curiae Lambda Legal Defense and Education Fund, Inc., One Colorado and One Colorado Educational Fund

 Â 

 Â¶1Â Â Â Â Â Â Â  This case juxtaposes the rights of complainants, Charlie Craig and David Mullins, under Coloradoâs public accommodations law to obtain a wedding cake to celebrate their same-sex marriage against the rights of respondents, Masterpiece Cakeshop, Inc., and its owner, Jack C. Phillips, who contend that requiring them to provide such a wedding cake violates their constitutional rights to freedom of speech and the free exercise of religion.

 Â¶2Â Â Â Â Â Â Â  This appeal arises from an administrative decision by appellee, the Colorado Civil Rights Commission (Commission), which upheld the decision of an administrative law judge (ALJ), who ruled in favor of Craig and Mullins and against Masterpiece and Phillips on cross-motions for summary judgment. For the reasons discussed below, we affirm the Commissionâs decision.

 I. Background

 Â¶3Â Â Â Â Â Â Â  In July 2012, Craig and Mullins visited Masterpiece, a bakery in Lakewood, Colorado, and requested that Phillips design and create a cake to celebrate their same-sex wedding. Phillips declined, telling them that he does not create wedding cakes for same-sex weddings because of his religious beliefs, but advisingÂ Craig and Mullins that he would be happy to make and sell them any other baked goods. Craig and Mullins promptly left Masterpiece without discussing with Phillips any details of their wedding cake. The following day, Craigâs mother, Deborah Munn, called Phillips, who advised her that Masterpiece did not make wedding cakes for same-sex weddings because of his religious beliefs and because Colorado did not recognize same-sex marriages.

 Â¶4Â Â Â Â Â Â Â  The ALJ found that Phillips has been a Christian for approximately thirty-five years and believes in Jesus Christ as his Lord and savior. Phillips believes that decorating cakes is a form of art, that he can honor God through his artistic talents, and that he would displease God by creating cakes for same-sex marriages.

 Â¶5Â Â Â Â Â Â Â  Craig and Mullins had planned to marry in Massachusetts, where same-sex marriages were legal, and later celebrate with friends in Colorado, which at that time did not recognize same-sex marriages.[1]See Colo. Const. art. 2, Â§ 31; Â§ 14-2-104(1)(b), C.R.S.Â 2014.

 Â¶6Â Â Â Â Â Â Â  Craig and Mullins later filed charges of discrimination with the Colorado Civil Rights Division (Division), alleging discrimination based on sexual orientation under the Colorado Anti-Discrimination Act (CADA), Â§Â§ 24-34-301 to -804, C.R.S. 2014. After an investigation, the Division issued a notice of determination finding probable cause to credit the allegations of discrimination. Craig and Mullins then filed a formal complaint with the Office of Administrative Courts alleging that Masterpiece had discriminated against them in a place of public accommodation because of their sexual orientation in violation of section 24-34-601(2), C.R.S. 2014.

 Â¶7Â Â Â Â Â Â Â  The parties did not dispute any material facts. Masterpiece and Phillips admitted that the bakery is a place of public accommodation and that they refused to sell Craig and Mullins a cake because of their intent to engage in a same-sex marriageÂ ceremony. After the parties filed cross-motions for summary judgment, the AUJ issued a lengthy written order finding in favor of Craig and Mullins.

 Â¶8Â Â Â Â Â Â Â  The AUJâs order was affirmed by the Commission. The Commissionâs final cease and desist order required that Masterpiece (1) take remedial measures, including comprehensive staff training and alteration to the companyâs policies to ensure compliance with CADA; and (2) file quarterly compliance reports for two years with the Division describing the remedial measures taken to comply with CADA and documenting all patrons who are denied service and the reasons for the denial.

 Â¶9Â Â Â Â Â Â Â  Masterpiece and Phillips now appeal the Commissionâs order.

 II. Motion to Dismiss

 Â¶10Â Â Â Â Â Â Â  At the outset, Phillips and Masterpiece contend that the AUJ and the Commission erred in denying two motions to dismiss which they filed pursuant to C.R.C.P. 12(b)(1), (2), and (5). We disagree.

 A. Standard of Review

 Â¶11Â Â Â Â Â Â Â  We review the AUJâs ruling on a C.R.C.P. 12(b) motion to dismiss de novo. Â§ 24-4-106(7), C.R.S. 2014; Bly v. Story, 241 P.3d 529, 533 (Colo. 2010); Tidwell ex rel. Tidwell v. City & Cnty. of Denver, 83 P.3d 75, 81 (Colo. 2003).[2]

 B. First Motion to Dismiss â Lack of Jurisdiction Over Phillips

 Â¶12Â Â Â Â Â Â Â  Phillips filed a motion to dismiss pursuant to C.R.C.P. 12(b) alleging that the Commission lacked jurisdiction to adjudicate the charges against him.[3] Specifically, he claimed that it lacked jurisdiction because Mullins named only âMasterpiece Cakeshop,â and not Phillips personally, as the respondent in the initial charge of discrimination filed with the Commission.

 Â¶13Â Â Â Â Â Â Â  The ALJ, applying the relation back doctrine of C.R.C.P. 15(c), denied the motion. He concluded that adding Phillips as a respondent to the formal complaint was permissible for several reasons. First, he noted that both the charge of discrimination and the formal complaint alleged identical conduct. He further noted that Phillips was aware from the beginning of the litigation that he was the person whose conduct was at issue. Finally, the ALJ found that Phillips should have known that, but for Mullinsâ oversight inÂ not naming Phillips, he would have been named as a respondent in the charge of discrimination. We agree with the AUJ.

 Â¶14Â Â Â Â Â Â Â  Although no Colorado appellate court has previously addressed this issue, we conclude that the omission of a partyâs name from a CADA charging document should be considered under the relation back doctrine.

 Â¶15Â Â Â Â Â Â Â  C.R.C.P. 15(c), which is nearly identical to Fed. R. Civ. P. 15(c)(1)(C), contains three requirements which, if met, allow for a claim in an amended complaint against a new party to relate back to the filing of the original: (1) the claim must have arisen out of the same transaction or conduct set forth in the original complaint; (2) the new party must have received notice of the action within the period provided by law for commencing the action; and (3) the new party must have known or reasonably should have known that, âbut for a mistake concerning the identity of the proper party, the action would have been brought against him.â See S. Ute Indian Tribe v. King Consol. Ditch Co., 250 P.3d 1226, 1237 (Colo. 2011); Lavarato v. Branney, 210 P.3d 485, 489 (Colo. App. 2009). âMany courts have liberally construed [Fed. R. Civ. P. 15(c)(1)(C)] to findÂ that amendments simply adding or dropping parties, as well as amendments that actually substitute defendants, fall within the ambit of the rule.â 6 Charles A. Wright & Arthur R. Miller, Federal Practice and Procedure Â§ 1498.2 (3d ed. 1998); see also Goodman v. Praxair, Inc., 494 F.3d 458, 468 (4th Cir. 2007).

 Â¶16Â Â Â Â Â Â Â  Courts interpreting Fed. R. Civ. P. 15(c)(1)(C) have concluded that the pertinent question when amending any claim to add a new party is whether the party to be added, when viewed from the standpoint of a reasonably prudent person, should have expected that the original complaint might be altered to add the new party. See Schiavone v. Fortune, 477 U.S. 21, 31 (1986) (âThe linchpin is notice, and notice within the limitations period.â); 6 Wright & Miller at Â§ 1498.3 (âRelation back will be refused only if the court finds that there is no reason why the party to be added should have understood that it was not named due to mistake.â).

 Â¶17Â Â Â Â Â Â Â  Here, the ALJ properly found that the three requirements for application of the relation back doctrine were satisfied. First, the claim against Phillips arose out of the same transaction as the original complaint against Masterpiece. Second, Phillips receivedÂ timely notice of the original charge filed against Masterpiece. Indeed, he responded to it on behalf of Masterpiece. Third, Phillips knew or reasonably should have known that the original complaint should have named him as a respondent. The charging document frequently referred to Phillips by name and identified him as the owner of Masterpiece Cakeshop and the person who told Craig and Mullins that his standard business practice was to refuse to make wedding cakes for same-sex weddings. Consequently, Phillips suffered no prejudice from not being named in the original complaint.

 Â¶18Â Â Â Â Â Â Â  Based on these findings, we conclude that the AUJ did not err in applying C.R.C.P. 15(c)âs ârelation backâ rule. Accordingly, we conclude that the AUJ did not err when he denied Phillipsâ motion to dismiss.

 C. Second Motion to Dismiss â Public Accommodation Charges

 Â¶19Â Â Â Â Â Â Â  Phillips and Masterpiece jointly filed the second motion to dismiss. They alleged that the Commission lacked jurisdiction and failed to state a claim in its notice of determination as required by section 24-34-306(2)(b)(II), C.R.S. 2014. We disagree.Â 

 Â¶20Â Â Â Â Â Â Â  Section 24-34-306(2)(b)(II) provides: âIf the director or the directorâs designee determines that probable cause exists, the director or the directorâs designee shall serve the respondent with written notice stating with specificity the legal authority and jurisdiction of the commission and the matters of fact and law asserted.â

 Â¶21Â Â Â Â Â Â Â  The Divisionâs letter of probable cause determination erroneously referenced section 24-34-402, C.R.S. 2014, the employment practices section of CADA, and not section 24-34Â­601(2), the public accommodations section under which Craig and Mullins filed their complaint. According to Phillips and Masterpiece, this erroneous citation violated section 24-34-306(2)(b)(II)âs requirement that respondents be notified âwith specificityâ of the âlegal authority and jurisdiction of the commission.â

 Â¶22Â Â Â Â Â Â Â  The AUJ denied the second motion to dismiss. He concluded that Masterpiece and Phillips could not have been misled by the error, because â[t]here is no dispute that this case does not involveÂ either an allegation or evidence of discriminatory employment practices.â Again, we agree with the AUJ.

 Â¶23Â Â Â Â Â Â Â  The charge of discrimination and the notice of determination correctly referenced section 24-34-601, the public accommodations section of CADA, several times. Further, the directorâs designee who drafted the notice of determination with the incorrect citation signed an affidavit explaining that the reference to section 24-34Â­402 was a typographical error, and that the reference should have been to section 24-34-601. Because Masterpiece and Phillips could not have been misled about the legal basis for the Commissionâs findings, we perceive no error in the Commissionâs refusal to dismiss the charges against Masterpiece and Phillips because of a typographical error. See Andersen v. Lindenbaum, 160 P.3d 237, 238 (Colo. 2007) (typographical error in letter constitutes reasonable explanation for incorrect date later attested to in deposition).

 Â¶24Â Â Â Â Â Â Â  Accordingly, we conclude that the AUJ did not err when he denied Phillipsâ and Masterpieceâs second motion to dismiss.[4]

 III. CADA Violation

 Â¶25Â Â Â Â Â Â Â  Masterpiece contends that the ALJ erred in concluding that its refusal to create a wedding cake for Craig and Mullins was âbecause ofâ their sexual orientation. Specifically, Masterpiece asserts that its refusal to create the cake was âbecause ofâ its opposition to same-sex marriage, not because of its opposition to their sexual orientation. We conclude that the act of same-sex marriage is closely correlated to Craigâs and Mullinsâ sexual orientation, and therefore, the ALJ did not err when he found that Masterpieceâs refusal to create a wedding cake for Craig and Mullins was âbecause ofâ their sexual orientation, in violation of CADA.

 A. Standard of Review

 Â¶26Â Â Â Â Â Â Â  Whether Masterpiece violated CADA is a question of law reviewed de novo. Â§ 24-4-106(7).

 B. Applicable Law

 Â¶27Â Â Â Â Â Â Â  Section 24-34-601(2)(a), C.R.S. 2014, reads, as relevant here:

 It is a discriminatory practice and unlawful for a person, directly or indirectly, to refuse, withhold from, or deny to an individual or aÂ group, because of . . . sexual orientation . . . the full and equal enjoyment of the goods, services, facilities, privileges, advantages, or accommodations of a place of public accommodation . . . .5

 Â¶28Â Â Â Â Â Â Â  In Tesmer v. Colorado High School Activities Association, 140 P.3d 249, 254 (Colo. App. 2006), a division of this court concluded that to prevail on a discrimination claim under CADA, plaintiffs must prove that, âbut forâ their membership in an enumerated class, they would not have been denied the full privileges of a place of public accommodation. The division explained that plaintiffs need not establish that their membership in the enumerated class was the âsoleâ cause of the denial of services. Id. Rather, it is sufficient that they show that the discriminatory action was based in whole or in part on their membership in the protected class. Id.

 Â¶29Â Â Â Â Â Â Â  Further, a âplace of public accommodationâ is âany place of business engaged in any sales to the public and any place offering services, facilities, privileges, advantages, or accommodations to the public, including but not limited to any business offering wholesaleÂ or retail sales to the public.â Â§ 24-34-601(1). Finally, CADA defines âsexual orientationâ as âan individualâs orientation toward heterosexuality, homosexuality, bisexuality, or transgender status or another individualâs perception thereof.â Â§ 24-34-301(7), C.R.S. 2014.

 C. Analysis

 Â¶30Â Â Â Â Â Â Â  Masterpiece asserts that it did not decline to make Craigâs and Mullinsâ wedding cake âbecause ofâ their sexual orientation. It argues that it does not object to or refuse to serve patrons because of their sexual orientation, and that it assured Craig and Mullins that it would design and create any other bakery product for them, just not a wedding cake. Masterpiece asserts that its decision was solely âbecause ofâ Craigâs and Mullinsâ intended conduct â entering into marriage with a same-sex partner â and the celebratory message about same-sex marriage that baking a wedding cake would convey. Therefore, because its refusal to serve Craig and Mullins was not âbecause ofâ their sexual orientation, Masterpiece contends that it did not violate CADA. We disagree.

 Â¶31Â Â Â Â Â Â Â  Masterpiece argues that the ALJ made two incorrect presumptions. First, it contends that the ALJ incorrectly presumed that opposing same-sex marriage is tantamount to opposing the rights of gays, lesbians, and bisexuals to the equal enjoyment of public accommodations. Second, it contends that the ALJ incorrectly presumed that only gay, lesbian, and bisexual couples engage in same-sex marriage.

 Â¶32Â Â Â Â Â Â Â  Masterpiece thus distinguishes between discrimination based on a personâs status and discrimination based on conduct closely correlated with that status. However, the United States Supreme Court has recognized that such distinctions are generally inappropriate. See Christian Legal Socây Chapter of Univ. of Cal., Hastings Coll. of Law v. Martinez, 561 U.S. 661, 689 (2010) (â[The Christian Legal Society] contends that it does not exclude individuals because of sexual orientation, but rather âon the basis of a conjunction of conduct and the belief that the conduct is not wrong.â . . . Our decisions have declined to distinguish between status and conduct in this context.â); Lawrence v. Texas, 539 U.S. 558, 575 (2003) (âWhen homosexual conduct is made criminal byÂ the law of the State, that declaration in and of itself is an invitation to subject homosexual persons to discrimination.â); id. at 583 (OâConnor, J., concurring in the judgment) (âWhile it is true that the law applies only to conduct, the conduct targeted by this law is conduct that is closely correlated with being homosexual. Under such circumstances, [the] law is . . . directed toward gay persons as a class.â); see also Bob Jones Univ. v. United States, 461 U.S. 574, 605 (1983) (concluding that prohibiting admission to students married to someone of a different race was a form of racial discrimination, although the ban restricted conduct).

 Â¶33Â Â Â Â Â Â Â  Further, in Obergefell v. Hodges, 576 U.S. ___, 135 S. Ct. 2584 (2015), the Supreme Court equated laws precluding same-sex marriage to discrimination on the basis of sexual orientation. Id. at ___, 135 S. Ct. at 2604 (observing that the âdenial to same-sex couples of the right to marryâ is a âdisability on gays and lesbiansâ which âserves to disrespect and subordinate themâ). The Court stated: âThe nature of marriage is that, through its enduring bond, two persons together can find other freedoms, such as expression, intimacy, and spirituality. This is true for all persons, whateverÂ their sexual orientation.â Id. at ___, 135 S. Ct. at 2599 (emphasis added). âWere the Court to stay its hand . . . it still would deny gays and lesbians many rights and responsibilities intertwined with marriage.â Id. at ___, 135 S. Ct. at 2606.

 Â¶34Â Â Â Â Â Â Â  In these decisions, the Supreme Court recognized that, in some cases, conduct cannot be divorced from status. This is so when the conduct is so closely correlated with the status that it is engaged in exclusively or predominantly by persons who have that particular status. We conclude that the act of same-sex marriage constitutes such conduct because it is âengaged in exclusively or predominantlyâ by gays, lesbians, and bisexuals. Masterpieceâs distinction, therefore, is one without a difference. But for their sexual orientation, Craig and Mullins would not have sought to enter into a same-sex marriage, and but for their intent to do so, Masterpiece would not have denied them its services.

 Â¶35Â Â Â Â Â Â Â  In Elane Photography, LLC v. Willock, the New Mexico Supreme Court rejected a similar argument raised by a wedding photographer. 309 P.3d 53, 60-64 (N.M. 2013). The court concluded that by prohibiting discrimination on the basis of sexualÂ orientation, New Mexicoâs antidiscrimination law similarly protects âconduct that is inextricably tied to sexual orientation,â including the act of same-sex marriage. Id. at 62. The court observed that â[o]therwise, we would interpret [the New Mexico public accommodations law] as protecting same-gender couples against discriminatory treatment, but only to the extent that they do not openly display their same-gender sexual orientation.â Id. We agree with the reasoning of the New Mexico Supreme Court.[6]

 Â¶36Â Â Â Â Â Â Â  Masterpiece relies on Bray v. Alexandria Womenâs Health Clinic, 506 U.S. 263 (1993), which declined to equate opposition to voluntary abortion with discrimination against women. Id. at 269Â­70. As in Bray, it asks us to decline to equate opposition to same-sex marriage with discrimination against gays, lesbians, and bisexuals. Masterpieceâs reliance on Bray is misplaced.

 Â¶37Â Â Â Â Â Â Â  Bray considered whether the defendants, several organizations that coordinated antiabortion demonstrations, could be subject to tort liability under 42 U.S.C. Â§ 1985(3) (1988).[7] Established precedent required that plaintiffs in section 1985(3) actions prove that âsome . . . class-based, invidiously discriminatory animus [lay] behind the [defendantâs] actions.â Griffin v. Breckenridge, 403 U.S. 88, 102 (1971). However, CADA requires no such showing of âanimus.â See Tesmer, 140 P.3d at 253 (plaintiffs need only prove that âbut forâ their membership in an enumerated class they would not have been denied the full privileges of a place of public accommodation).

 Â¶38Â Â Â Â Â Â Â  Further, Masterpiece admits that it refused to serve Craig and Mullins âbecause ofâ its opposition to persons entering into same-sex marriages, conduct which we conclude is closely correlated with sexual orientation. Therefore, even if we assume that CADA requires plaintiffs to establish an intent to discriminate, as in section 1985(3) action, the ALJ reasonably could have inferred fromÂ Masterpieceâs conduct an intent to discriminate against Craig and Mullins âbecause ofâ their sexual orientation.

 Â¶39Â Â Â Â Â Â Â  We also note that although the Bray Court held that opposition to voluntary abortion did not equate to discrimination against women, it observed that â[s]ome activities may be such an irrational object of disfavor that, if they are targeted, and if they also happen to be engaged in exclusively or predominantly by a particular class of people, an intent to disfavor that class can readily be presumed.â 506 U.S. at 270. The Court provided, by way of example, that â[a] tax on wearing yarmulkes is a tax on Jews.â Id. Likewise, discrimination on the basis of oneâs opposition to same-sex marriage is discrimination on the basis of sexual orientation.

 Â¶40Â Â Â Â Â Â Â  We reject Masterpieceâs related argument that its willingness to sell birthday cakes, cookies, and other non-wedding cake products to gay and lesbian customers establishes that it did not violate CADA. Masterpieceâs potential compliance with CADA in this respect does not permit it to refuse services to Craig and Mullins that it otherwise offers to the general public. See ElaneÂ Photography, 309 P.3d at 62 (â[I]f a restaurant offers a full menu to male customers, it may not refuse to serve entrees to women, even if it will serve them appetizers. . . . Elane Photographyâs willingness to offer some services to [a woman entering a same-sex marriage] does not cure its refusal to provide other services that it offered to the general public.â).[8]

 Â¶41Â Â Â Â Â Â Â  Finally, Masterpiece argues that the ALJ wrongly presumed that only same-sex couples engage in same-sex marriage. In support, it references the case of two heterosexual New Zealanders who married in connection with a radio talk show contest. However, as the Bray court explained, we do not distinguish between conduct and status where the targeted conduct is engaged in âpredominantly by a particular class of people.â 506 U.S. at 270. An isolated example of two heterosexual men marrying does notÂ persuade us that same-sex marriage is not predominantly, and almost exclusively, engaged in by gays, lesbians, and bisexuals.

 Â¶42Â Â Â Â Â Â Â  Therefore, we conclude that the ALJ did not err by concluding that Masterpiece refused to create a wedding cake for Craig and Mullins âbecause ofâ their sexual orientation. CADA prohibits places of public accommodations from basing their refusal to serve customers on their sexual orientation, and Masterpiece violated Coloradoâs public accommodations law by refusing to create a wedding cake for Craigâs and Mullinsâ same-sex wedding celebration.

 Â¶43Â Â Â Â Â Â Â  Having concluded that Masterpiece violated CADA, we next consider whether the Commissionâs application of the law under these circumstances violated Masterpieceâs rights to freedom of speech and free exercise of religion protected by the United States and Colorado Constitutions.

 IV. Compelled Expressive Conduct and Symbolic Speech

 Â¶44Â Â Â Â Â Â Â  Masterpiece contends that the Commissionâs cease and desist order compels speech in violation of the First Amendment by requiring it to create wedding cakes for same-sex weddings.Â Masterpiece argues that wedding cakes inherently convey a celebratory message about marriage and, therefore, the Commissionâs order unconstitutionally compels it to convey a celebratory message about same-sex marriage in conflict with its religious beliefs.

 Â¶45Â Â Â Â Â Â Â  We disagree. We conclude that the Commissionâs order merely requires that Masterpiece not discriminate against potential customers in violation of CADA and that such conduct, even if compelled by the government, is not sufficiently expressive to warrant First Amendment protections.

 A. Standard of Review

 Â¶46Â Â Â Â Â Â Â  Whether the Commissionâs order unconstitutionally infringes on Masterpieceâs right to the freedom of expression protected by the First Amendment is a question of law that we review de novo. Bose Corp. v. Consumers Union, 466 U.S. 485, 499 (1984); Lewis v. Colo. Rockies Baseball Club, Ltd., 941 P.2d 266, 270-71 (Colo. 1997).

 B. Applicable Law

 Â¶47Â Â Â Â Â Â Â  The First Amendment of the United States Constitution prohibits laws âabridging the freedom of speech.â U.S. Const.Â amend. I; Nev. Commân on Ethics v. Carrigan, 564 U.S. ___, ___, 131 S. Ct. 2343, 2347 (2011); Curious Theatre Co. v. Colo. Depât of Pub. Health & Envât, 220 P.3d 544, 551 (Colo. 2009) (âThe guarantees of the First Amendment are applicable to the states through the Due Process Clause of the Fourteenth Amendment.â). Article II, section 10 of the Colorado Constitution, which provides greater protection of free speech than does the First Amendment, see Lewis, 941 P.2d at 271, provides that â[n]o law shall be passed impairing the freedom of speech; every person shall be free to speak, write or publish whatever he will on any subject.â[9]

 Â¶48Â Â Â Â Â Â Â  The freedom of speech protected by the First Amendment includes the âright to refrain from speakingâ and prohibits the government from telling people what they must say. Wooley v. Maynard, 430 U.S. 705, 714 (1977); Rumsfeld v. Forum for Academic & Institutional Rights, Inc., 547 U.S. 47, 61 (2006) (hereafter FAIR); In re Hickenlooper, 2013 CO 62, Â¶23. ThisÂ compelled speech doctrine, on which Masterpiece relies, was first articulated by the Supreme Court in West Virginia Board of Education v. Barnette, 319 U.S. 624 (1943), and has been applied in two lines of cases.

 Â¶49Â Â Â Â Â Â Â  The first line of cases prohibits the government from requiring that an individual âspeak the governmentâs message.â FAIR, 547 U.S. at 63; see also Wooley, 430 U.S. at 715-17 (holding that New Hampshire could not require individuals to have its slogan âLive Free or Dieâ on their license plates); Barnette, 319 U.S. at 642 (holding that West Virginia could not require students to salute the American flag and recite the Pledge of Allegiance).

 Â¶50Â Â Â Â Â Â Â  These cases establish that the government cannot âprescribe what shall be orthodox in politics, nationalism, religion, or other matters of opinionâ by forcing individuals to publicly disseminate its own ideological message. Barnette, 319 U.S. at 642. The government also cannot require âthe dissemination of an ideological message by displaying it on [an individualâs] private property in a manner and for the express purpose that it be observed and read by the public.â Wooley, 430 U.S. at 713; Barnette, 319 U.S. at 642Â (observing that the state cannot âinvade[] the sphere of intellect and spirit which it is the purpose of the First Amendment to our Constitution to reserve from all official controlâ).

 Â¶51Â Â Â Â Â Â Â  The second line of compelled speech cases establishes that the government may not require an individual âto host or accommodate another speakerâs message.â FAIR, 547 U.S. at 63. For example, in Miami Herald Publishing Co. v. Tornillo, 418 U.S. 241, 244 (1974), the Supreme Court invalidated a Florida law which provided that, if a local newspaper criticized a candidate for public office, the candidate could demand that the newspaper publish his or her reply to the criticism free of charge. Similarly, in Pacific Gas & Electric Co. v. Public Utilities Commission of California, 475 U.S. 1, 4 (1986), the Supreme Court struck down a California Public Utilities Commission regulation that permitted third-party intervenors in ratemaking proceedings to include messages in the utilityâs billing envelopes, which it distributed to customers. These cases establish that the government may not commandeer a private speakerâs means of accessing its audience by requiring that the speaker disseminate a third-partyâs message.

 Â¶52Â Â Â Â Â Â Â  The Supreme Court has also recognized that some forms of conduct are symbolic speech and deserve First Amendment protections. United States v. OâBrien, 391 U.S. 367, 376 (1968) (holding that the public burning of draft cards during anti-war protest is a form of expressive conduct). However, because â[i]t is possible to find some kernel of expression in almost every activity a person undertakes,â City of Dallas v. Stanglin, 490 U.S. 19, 25 (1989), the Supreme Court has rejected the view that âconduct can be labeled âspeechâ whenever the person engaging in the conduct intends thereby to express an idea,â FAIR, 547 U.S. at 65-66 (some internal quotation marks omitted). Rather, First Amendment protections extend only to conduct that is âinherently expressive.â Id.

 Â¶53Â Â Â Â Â Â Â  In deciding whether conduct is âinherently expressive,â we ask whether ââ[a]n intent to convey a particularized message was present, and [whether] the likelihood was great that the message would be understood by those who viewed it.ââ Texas v. Johnson, 491 U.S. 397, 404 (1989) (quoting Spence v. Washington, 418 U.S. 405, 410-11 (1974)). The message need not be ânarrow,â orÂ âsuccinctly articulable.â Hurley v. Irish-American Gay, Lesbian & Bisexual Group of Boston, 515 U.S. 557, 569 (1995). The Supreme Court has recognized expressive conduct in several cases. See, e.g., id. (marching in a parade in support of gay and lesbian rights); United States v. Eichman, 496 U.S. 310, 312-19 (1990) (burning of the American flag in protest of government policies); Johnson, 491 U.S. at 399 (burning of the American flag in protest of Reagan administration and various corporate policies); Natâl Socialist Party of Am. v. Vill. of Skokie, 432 U.S. 43, 43 (1977) (wearing of a swastika in a parade); Tinker v. Des Moines Indep. Cmty. Sch. Dist., 393 U.S. 503, 505-06 (1969) (wearing an armband in protest of war).

 Â¶54Â Â Â Â Â Â Â  However, other decisions have declined to recognize certain conduct as expressive. See Carrigan, 564 U.S. at ___, 131 S. Ct. at 2350 (legislatorsâ act of voting not expressive because it âsymbolizes nothingâ about their reasoning); Jacobs v. Clark Cnty. Sch. Dist., 526 F.3d 419, 437-38 (9th Cir. 2008) (wearing of nondescript school uniform did not convey particularized message of uniformity).

 Â¶55Â Â Â Â Â Â Â  Masterpieceâs contentions involve claims of compelled expressive conduct. In such cases, the threshold question is whether the compelled conduct is sufficiently expressive to trigger First Amendment protections. See Jacobs, 526 F.3d at 437-38 (threshold question in plaintiffâs claim that school uniform policy constituted compelled expressive conduct is whether the wearing of a uniform conveys symbolic messages and therefore was expressive). The party asserting that conduct is expressive bears the burden of demonstrating that the First Amendment applies and the party must advance more than a mere âplausible contentionâ that its conduct is expressive. Clark v. Cmty. for Creative Non-Violence, 468 U.S. 288, 293 n.5 (1984).

 Â¶56Â Â Â Â Â Â Â  Finally, a conclusion that the Commissionâs order compels expressive conduct does not necessarily mean that the order is unconstitutional. If it does compel such conduct, the question is then whether the government has sufficient justification for regulating the conduct. The Supreme Court has recognized that âwhen âspeechâ and ânon-speechâ elements are combined in the same course of conduct, a sufficiently important governmental interest inÂ regulating the non-speech element can justify incidental limitations on First Amendment freedoms.â OâBrien, 391 U.S. at 376. In other words, the government can regulate communicative conduct if it has an important interest unrelated to the suppression of the message and if the impact on the communication is no more than necessary to achieve the governmentâs purpose. Id.; see also Barnes v. Glen Theatre Inc., 501 U.S. 560, 567-68 (1991); Johnson, 491 U.S. at 407.

 C. Analysis

 Â¶57Â Â Â Â Â Â Â  Masterpiece contends that wedding cakes inherently communicate a celebratory message about marriage and that, by forcing it to make cakes for same-sex weddings, the Commissionâs cease and desist order unconstitutionally compels it to express a celebratory message about same-sex marriage that it does not support. We disagree.

 Â¶58Â Â Â Â Â Â Â  The ALJ rejected Masterpieceâs argument that preparing a wedding cake for same-sex weddings necessarily involves expressive conduct. He recognized that baking and creating a wedding cake involves skill and artistry, but nonetheless concluded that, becauseÂ Phillips refused to prepare a cake for Craig and Mullins before any discussion of the cakeâs design, the AUJ could not determine whether Craigâs and Mullinsâ desired wedding cake would constitute symbolic speech subject to First Amendment protections.

 Â¶59Â Â Â Â Â Â Â  Masterpiece argues that the AUJ wrongly considered whether the âconductâ of creating a cake is expressive, and not whether the product of that conduct, the wedding cake itself, constitutes symbolic expression. It asserts that the AUJ wrongly employed the test for expressive conduct instead of that for compelled speech. However, Masterpieceâs argument mistakenly presumes that the legal doctrines involving compelled speech and expressive conduct are mutually exclusive. As noted, because the First Amendment only protects conduct that conveys a message, the threshold question in cases involving expressive conduct â or as here, compelled expressive conduct â is whether the conduct in question is sufficiently expressive so as to trigger First Amendment protections. See Jacobs, 526 F.3d at 437-38.

 Â¶60Â Â Â Â Â Â Â  We begin by identifying the compelled conduct in question. As noted, the Commissionâs order requires that Masterpiece âcease and desist from discriminating against [Craig and Mullins] and other same-sex couples by refusing to sell them wedding cakes or any product [it] would sell to heterosexual couples.â Therefore, the compelled conduct is the Colorado governmentâs mandate that Masterpiece comport with CADA by not basing its decision to serve a potential client, at least in part, on the clientâs sexual orientation. This includes a requirement that Masterpiece sell wedding cakes to same-sex couples, but only if it wishes to serve heterosexual couples in the same manner.

 Â¶61Â Â Â Â Â Â Â  Next, we ask whether, by comporting with CADA and ceasing to discriminate against potential customers on the basis of their sexual orientation, Masterpiece conveys a particularized message celebrating same-sex marriage, and whether the likelihood is great that a reasonable observer would both understand the message and attribute that message to Masterpiece. See Spence, 418 U.S. at 410-11.

 Â¶62Â Â Â Â Â Â Â  We conclude that the act of designing and selling a wedding cake to all customers free of discrimination does not convey a celebratory message about same-sex weddings likely to beÂ understood by those who view it. We further conclude that, to the extent that the public infers from a Masterpiece wedding cake a message celebrating same-sex marriage, that message is more likely to be attributed to the customer than to Masterpiece.

 Â¶63Â Â Â Â Â Â Â  First, Masterpiece does not convey a message supporting same-sex marriages merely by abiding by the law and serving its customers equally. In FAIR, several law schools challenged a federal law that denied funding to institutions of higher education that either prohibit or prevent military recruiters from accessing their campuses. 547 U.S. at 64-65. The law schools argued that, by forcing them to treat military and nonmilitary recruiters alike, the law compelled them to send âthe message that they see nothing wrong with the militaryâs policies [regarding gays in the military], when they do.â Id. The Court rejected this argument, observing that students âcan appreciate the difference between speech a school sponsors and speech the school permits because legally required to do so.â Id. at 65; see also Rosenberg v. Rector & Visitors of Univ. of Va., 515 U.S. 819, 841-42 (1995); PruneYard Shopping Ctr. v. Robins, 447 U.S. 74, 76-78 (1980).

 Â¶64Â Â Â Â Â Â Â  As in FAIR, we conclude that, because CADA prohibits all places of public accommodation from discriminating against customers because of their sexual orientation, it is unlikely that the public would view Masterpieceâs creation of a cake for a same-sex wedding celebration as an endorsement of that conduct. Rather, we conclude that a reasonable observer would understand that Masterpieceâs compliance with the law is not a reflection of its own beliefs.

 Â¶65Â Â Â Â Â Â Â  The Elane Photography court distinguished Wooley and Barnette, and similarly concluded that New Mexicoâs public accommodations law did not compel the photographer to convey any particularized message, but rather âonly mandates that if Elane Photography operates a business as a public accommodation, it cannot discriminate against potential clients based on their sexual orientation.â 309 P.3d at 64. It concluded that â[r]easonable observers are unlikely to interpret Elane Photographyâs photographs as an endorsement of the photographed events.â Id. at 69. We areÂ persuaded by this reasoning and similarly conclude that CADA does not compel expressive conduct.[10]

 Â¶66Â Â Â Â Â Â Â  We do not suggest that Masterpieceâs status as a for-profit bakery strips it of its First Amendment speech protections. See Citizens United v. Fed. Election Commân, 558 U.S. 310, 365 (2010) (recognizing that corporations have free speech rights and holding that government cannot suppress speech on the basis of the speakerâs corporate identity). However, we must consider the allegedly expressive conduct within âthe context in which it occurred.â Johnson, 491 U.S. at 405. The public recognizes that, as a for-profit bakery, Masterpiece charges its customers for its goods and services. The fact that an entity charges for its goods and services reduces the likelihood that a reasonable observer willÂ believe that it supports the message expressed in its finished product. Nothing in the record supports the conclusion that a reasonable observer would interpret Masterpieceâs providing a wedding cake for a same-sex couple as an endorsement of same-sex marriage, rather than a reflection of its desire to conduct business in accordance with Coloradoâs public accommodations law. See FAIR, 547 U.S. at 64-65.

 Â¶67Â Â Â Â Â Â Â  For the same reason, this case also differs from Hurley, on which Masterpiece relies. There, the Supreme Court concluded that Massachusettsâ public accommodations statute could not require parade organizers to include among the marchers in a St. Patrickâs Day parade a group imparting a message the organizers did not wish to convey. 515 U.S. at 559. Central to the Courtâs conclusion was the âinherent expressiveness of marching to make a point,â and its observation that a âparadeâs overall message is distilled from the individual presentations along the way, and each unitâs expression is perceived by spectators as part of the whole.â Id. at 568, 577. The Court concluded that spectators would likely attribute eachÂ marcherâs message to the parade organizers as a whole. Id. at 576Â­77.

 Â¶68Â Â Â Â Â Â Â  In contrast, it is unlikely that the public would understand Masterpieceâs sale of wedding cakes to same-sex couples as endorsing a celebratory message about same-sex marriage. See Elane Photography, 309 P.3d at 68 (âWhile photography may be expressive, the operation of a photography business is not.â); see also Rosenberg, 515 U.S. at 841-42 (observers not likely to mistake views of university-supported religious newspaper with those of the university); Turner Broad. Sys., Inc. v. FCC, 512 U.S. 622, 655 (1994) (cable viewers likely would not assume that the broadcasts carried on a cable system convey ideas or messages endorsed by the cable operators); PruneYard, 447 U.S. at 81 (observers not likely to attribute speakersâ message to owner of shopping center); Nathanson v. Mass. Commân Against Discrimination, No. 199901657, 2003 WL 22480688, at *6-*7 (Mass. Super. Ct. Sept. 16, 2003) (rejecting attorneyâs First Amendment compelled speech defense because she âoperates more as a conduit for the speech and expression of the client, rather than as a speaker for herselfâ).

 Â¶69Â Â Â Â Â Â Â  By selling a wedding cake to a same-sex couple, Masterpiece does not necessarily lead an observer to conclude that the bakery supports its customerâs conduct. The public has no way of knowing the reasons supporting Masterpieceâs decision to serve or decline to serve a same-sex couple. Someone observing that a commercial bakery created a wedding cake for a straight couple or that it did not create one for a gay couple would have no way of deciphering whether the bakeryâs conduct took place because of its views on same-sex marriage or for some other reason.

 Â¶70Â Â Â Â Â Â Â  We also find the Supreme Courtâs holding in Carrigan instructive. 564 U.S. at ___, 131 S. Ct. at 2346. There, the Court concluded that legislators do not have a personal, First Amendment right to vote in the legislative body in which they serve, and that restrictions on legislatorsâ voting imposed by a law requiring recusal in instances of conflicts of interest are not restrictions on their protected speech. Id. The Court rejected the argument that the act of voting was expressive conduct subject to First Amendment protections. Id. Although the Court recognized that voting âdiscloses . . . that the legislator wishes (for whatever reason) thatÂ the proposition on the floor be adopted,â it âsymbolizes nothingâ and is not âan act of communicationâ because it does not convey the legislatorâs reasons for the vote. Id. at __, 131 S. Ct. at 2350.

 Â¶71Â Â Â Â Â Â Â  We recognize that a wedding cake, in some circumstances, may convey a particularized message celebrating same-sex marriage and, in such cases, First Amendment speech protections may be implicated. However, we need not reach this issue. We note, again, that Phillips denied Craigâs and Mullinsâ request without any discussion regarding the wedding cakeâs design or any possible written inscriptions.

 Â¶72Â Â Â Â Â Â Â  Finally, CADA does not preclude Masterpiece from expressing its views on same-sex marriage â including its religious opposition to it â and the bakery remains free to disassociate itself from its customersâ viewpoints. We recognize that section 24-34-601(2)(a) of CADA prohibits Masterpiece from displaying or disseminating a notice stating that it will refuse to provide its services based on a customerâs desire to engage in same-sex marriage or indicating that those engaging in same-sex marriage are unwelcome at theÂ bakery.[11] However, CADA does not prevent Masterpiece from posting a disclaimer in the store or on the Internet indicating that the provision of its services does not constitute an endorsement or approval of conduct protected by CADA. Masterpiece could also post or otherwise disseminate a message indicating that CADA requires it not to discriminate on the basis of sexual orientation and other protected characteristics. Such a message would likely have the effect of disassociating Masterpiece from its customersâ conduct. See PruneYard, 447 U.S. at 87 (â[S]igns, for example could disclaimÂ any sponsorship of the message and could explain that the persons are communicating their own messages by virtue of state law.â).

 Â¶73Â Â Â Â Â Â Â  Therefore, we conclude that the Commissionâs order requiring Masterpiece not to discriminate against potential customers because of their sexual orientation does not force it to engage in compelled expressive conduct in violation of the First Amendment. Accordingly, because we conclude that the compelled conduct here is not expressive, the State need not show that it has an important interest in enforcing CADA.

 V. First Amendment and Article II, Section 4 â
 Free Exercise of Religion

 Â¶74Â Â Â Â Â Â Â  Next, Masterpiece contends that the Commissionâs order unconstitutionally infringes on its right to the free exercise of religion guaranteed by the First Amendment of the United States Constitution and article II, section 4 of the Colorado Constitution. We conclude that CADA is a neutral law of general applicability and, therefore, offends neither the First Amendment nor article II, section 4.

 A. Standard of Review

 Â¶75Â Â Â Â Â Â Â  Whether the Commissionâs order unconstitutionally infringes on Masterpieceâs free exercise rights, protected by the First Amendment and article II, section 4, is a question of law that we review de novo. Â§ 24-4-106.

 B. Applicable Law

 Â¶76Â Â Â Â Â Â Â  The Free Exercise Clause of the First Amendment provides: âCongress shall make no law . . . prohibiting the free exercise [of religion].â U.S. Const. amend I. The First Amendment is binding on the States through incorporation by the Fourteenth Amendment. See Cantwell v. Connecticut, 310 U.S. 296 (1940). Article II, section 4 of the Colorado Constitution provides: âThe free exercise and enjoyment of religious profession and worship, without discrimination, shall forever hereafter be guaranteed.â

 Â¶77Â Â Â Â Â Â Â  âThe free exercise of religion means, first and foremost, the right to believe and profess whatever religious doctrine one desires.â Empât Div., Depât of Human Res. v. Smith, 494 U.S. 872, 877 (1990), superseded on other grounds by statute as stated in Holt v. Hobbs, 574 U.S. __, 135 S. Ct. 853 (2015); see also Van Osdol v. Vogt, 908 P.2d 1122, 1126 (Colo. 1996). Free exercise of religion also involvesÂ the âperformance of (or abstention from) physical acts.â Smith, 494 U.S. at 877.

 Â¶78Â Â Â Â Â Â Â  Before the Supreme Courtâs decision in Smith, the Court consistently used a balancing test to determine whether a challenged government action violated the Free Exercise Clause of the First Amendment. See Wisconsin v. Yoder, 406 U.S. 205, 215 (1972); Sherbert v. Verner, 374 U.S. 398, 403 (1963). That test considered whether the challenged government action imposed a substantial burden on the practice of religion, and, if so, whether that burden was justified by a compelling government interest. Sherbert, 374 U.S. at 403.

 Â¶79Â Â Â Â Â Â Â  In Smith, the Court disavowed Sherbertâs balancing test and concluded that the Free Exercise Clause âdoes not relieve an individual of the obligation to comply with a valid and neutral law of general applicability on the ground that the law proscribes (or prescribes) conduct that his religion prescribes (or proscribes).â Smith, 494 U.S. at 879 (internal quotation marks omitted). The Court held that neutral laws of general applicability need only be rationally related to a legitimate governmental interest in order toÂ survive a constitutional challenge. Id. As a general rule, such laws do not offend the Free Exercise Clause.[12]

 Â¶80Â Â Â Â Â Â Â  However, if a law burdens a religious practice and is not neutral or not generally applicable, it âmust be justified by a compelling government interestâ and must be narrowly tailored to advance that interest. Smith, 494 U.S. at 883; Van Osdol, 908 P.2d at 1126.

 C. Analysis

 1. First Amendment Free ExerciseÂ 

 Â¶81Â Â Â Â Â Â Â  Masterpiece contends that its claim is not governed by Smithâs rational basis exception to general strict scrutiny review of free exercise claims for two reasons: (1) CADA is not âneutral and generally applicableâ and (2) its claim is a âhybridâ that implicates both its free exercise and free expression rights.[13] Again, weÂ disagree.

 Â¶82Â Â Â Â Â Â Â  First, we address Masterpieceâs contention that CADA is not neutral and not generally applicable. A law is not neutral âif the object of a law is to infringe upon or restrict practices because of their religious motivation.â Church of Lukumi Babalu Aye, Inc. v. City of Hialeah, 508 U.S. 520, 533 (1993). A law is not generally applicable when it imposes burdens on religiously motivated conduct while permitting exceptions for secular conduct or for favored religions. Id. at 543. The Supreme Court has explained that an improper intent to discriminate can be inferred where a law is a âreligious gerrymander[]â that burdens religious conduct while exempting similar secular activity. Id. at 534. If a law is either not neutral or not generally applicable, it âmust be justified by a compelling governmental interest and must be narrowly tailored to advance that interest.â Id. at 531-32.

 Â¶83Â Â Â Â Â Â Â  The Court has found only one law to be neither neutral nor generally applicable. In Church of Lukumi, the Court considered the constitutionality of a municipal ordinance prohibiting ritual animalÂ sacrifice. Id. at 534. The law applied to any individual or group that âkills, slaughters, or sacrifices animals for any type of ritual, regardless of whether or not the flesh or blood of the animals is to be consumed.â Id. at 527 (internal quotation marks omitted).

 Â¶84Â Â Â Â Â Â Â  Considering that the ordinanceâs terms such as âsacrificeâ and âritualâ could be either secular or religious, the Court nevertheless concluded that the law was not neutral because its purpose was to impede certain practices of the Santeria religion. Id. at 534. The Court further concluded that the law was not generally applicable because it exempted the killing of animals for several secular purposes, including the killing of animals in secular slaughterhouses, hunting, fishing, euthanasia of unwanted animals, and extermination of pests, id. at 526-28, 536, 543-44, as well as the killing of animals by some religions, including at kosher slaughterhouses, id. at 536-37.

 a. Neutral Law of General Applicability

 Â¶85Â Â Â Â Â Â Â  Masterpiece contends that, like the law in Church of Lukumi, CADA is neither neutral nor generally applicable. First, it argues that CADA is not generally applicable because it providesÂ exemptions for âplaces principally used for religious purposesâ such as churches, synagogues, and mosques, see Â§ 24-34-601(1), as well as places that restrict admission to one gender because of a bona fide relationship to its services, see Â§ 24-34-601(3). Second, it argues that the law is not neutral because it exempts âplaces principally used for religious purposes,â but not Masterpiece.

 Â¶86Â Â Â Â Â Â Â  We conclude that CADA is generally applicable, notwithstanding its exemptions. A law need not apply to every individual and entity to be generally applicable; rather, it is generally applicable so long as it does not regulate only religiously motivated conduct. See Church of Lukumi, 508 U.S. at 542-43 (â[I]nequality results when a legislature decides that the governmental interests it seeks to advance are worthy of being pursued only against conduct with a religious motivation.â). CADA does not discriminate on the basis of religion; rather, it exempts certain public accommodations that are âprincipally used for religious purposes.â Â§ 24-34-601(1).

 Â¶87Â Â Â Â Â Â Â  In this regard, CADA does not impede the free exercise of religion. Rather, its exemption for âplaces principally used forÂ religious purposesâ reflects an attempt by the General Assembly to reduce legal burdens on religious organizations and comport with the free exercise doctrine. Such exemptions are commonplace throughout Colorado law, e.g., Â§ 24-34-402(7) (exempting religious organizations and associations from employment discrimination laws); Â§ 24-34-502(3), C.R.S. 2014 (exempting religious organizations and institutions from several requirements of housing discrimination laws), and, in some cases, are constitutionally mandated. See, e.g., Hosanna-Tabor Evangelical Lutheran Church & Sch. v. EEOC, 565 U.S. ___, ___, 132 S. Ct. 694, 705-06 (2012) (holding that the First Amendment prohibits application of employment discrimination laws to disputes between religious organizations and their ministers).

 Â¶88Â Â Â Â Â Â Â  Further, CADA is generally applicable because it does not exempt secular conduct from its reach. Church of Lukumi, 508 U.S. at 543 (Laws are not generally applicable when they âimpose burdensâ âin a selective manner.â). In this respect, CADAâs exemption for places that restrict admission to one gender because of a bona fide relationship to its services does not discriminate onÂ the basis of religion. On its face, it applies equally to religious and nonreligious conduct, and therefore is generally applicable.

 Â¶89Â Â Â Â Â Â Â  Second, we conclude that CADA is neutral. Masterpiece asserts that CADA is not neutral because, although it exempts âplaces primarily used for religious purposes,â Masterpiece is not exempt. However, Masterpiece does not contend that its bakery is primarily used for religious purposes. CADA forbids all discrimination based on sexual orientation regardless of its motivation. Further, the existence of an exemption for religious entities undermines Masterpieceâs contention that the law discriminates against its conduct because of its religious character. See Priests for Life v. Depât of Health & Human Servs., 772 F.3d 229, 268 (D.C. Cir. 2014) (â[T]he existence of an exemption for religious employers substantially undermines contentions that government is hostile towards such employersâ religion.â).

 Â¶90Â Â Â Â Â Â Â  Finally, we reiterate that CADA does not compel Masterpiece to support or endorse any particular religious views. The law merely prohibits Masterpiece from discriminating against potential customers on account of their sexual orientation. As one courtÂ observed in addressing a similar free exercise challenge to the 1964 Civil Rights Act:

 Undoubtedly defendant . . . has a constitutional right to espouse the religious beliefs of his own choosing, however, he does not have the absolute right to exercise and practice such beliefs in utter disregard of the clear constitutional rights of other citizens. This Court refuses to lend credence or support to his position that he has a constitutional right to refuse to serve members of the Negro race in his business establishment upon the ground that to do so would violate his sacred religious beliefs.

 Newman v. Piggie Park Enters., Inc., 256 F. Supp. 941, 945 (D.S.C. 1966), affâd in relevant part and revâd in part on other grounds, 377 F.2d 433 (4th Cir. 1967), affâd and modified on other grounds, 390 U.S. 400 (1968).[14] Likewise, Masterpiece remains free to continueÂ espousing its religious beliefs, including its opposition to same-sex marriage. However, if it wishes to operate as a public accommodation and conduct business within the State of Colorado, CADA prohibits it from picking and choosing customers based on their sexual orientation.

 Â¶91Â Â Â Â Â Â Â  Therefore, we conclude that CADA was not designed to impede religious conduct and does not impose burdens on religious conduct not imposed on secular conduct. Accordingly, CADA is a neutral law of general applicability.

 b. âHybridâ Rights Claim

 Â¶92Â Â Â Â Â Â Â  Next, we address Masterpieceâs contention that its claim is not governed by Smithâs rational basis standard and that strict scrutiny review applies because its contention is a âhybridâ of both free exercise rights and free expression rights.

 Â¶93Â Â Â Â Â Â Â  In Smith, the Supreme Court distinguished its holding from earlier cases applying strict scrutiny to laws infringing free exercise rights, explaining that the âonly decisions in which we have held that the First Amendment bars application of a neutral, generallyÂ applicable law to religiously motivated actions have involved not the Free Exercise Clause alone, but the Free Exercise Clause in conjunction with other constitutional protections.â 494 U.S. at 881. Masterpiece argues that this language created an exception for âhybrid-rightsâ claims, holding that a party can still establish a violation of the Free Exercise Clause, even where the challenged law is neutral and generally applicable, by showing that the claim comprises both the right to free exercise of religion and an independent constitutional right. Id.

 Â¶94Â Â Â Â Â Â Â  We note that Coloradoâs appellate courts have not applied the âhybrid-rightsâ exception, and several decisions have cast doubt on its validity. See, e.g., Grace United Methodist Church v. City of Cheyenne, 451 F.3d 643, 656 (10th Cir. 2006) (âThe hybrid rights doctrine is controversial. It has been characterized as mere dicta not binding on lower courts, criticized as illogical, and dismissed as untenable.â (citations omitted)). Regardless, having concluded above that the Commissionâs order does not implicate Masterpieceâs freedom of expression, even if we assume the âhybrid-rightsâ exception exists, it would not apply here.

 Â¶95Â Â Â Â Â Â Â  Accordingly, we hold that CADA is a neutral law of general applicability, and does not offend the Free Exercise Clause of the First Amendment.

 2. Article II, Section 4 Free Exercise of Religion

 Â¶96Â Â Â Â Â Â Â  Masterpiece argues that, although neutral laws of general applicability do not violate the First Amendment, Smith, 494 U.S. at 879, the Free Exercise Clause of the Colorado Constitution requires that we review such laws under heightened, strict scrutiny. We disagree.

 Â¶97Â Â Â Â Â Â Â  Masterpiece gives two reasons supporting this assertion. First, it argues that Colorado appellate courts uniformly apply strict scrutiny to laws infringing fundamental rights. See, e.g., In re Parental Rights Concerning C.M., 74 P.3d 342, 344 (Colo. App. 2002) (âA legislative enactment that infringes on a fundamental right is constitutionally permissible only if it is necessary to promote a compelling state interest and does so in the least restrictive manner possible.â). Second, it argues that the Colorado Constitution provides broader protections for individual rights than the United States Constitution. See, e.g., Lewis, 941 P.2d at 271 (ColoradoÂ Constitution provides greater free speech protection than the United States Constitution); Bock v. Westminster Mall Co., 819 P.2d 55, 58 (Colo. 1991) (âConsistent with the United States Constitution, we may find that our state constitution guarantees greater protections of [free speech rights] than [are] guaranteed by the First Amendment.â).

 Â¶98Â Â Â Â Â Â Â  We recognize that, with regard to some individual rights, the Colorado Constitution has been interpreted more broadly than the United States Constitution, and that we apply strict scrutiny to many infringements of fundamental rights. However, the Colorado Supreme Court has also recognized that article II, section 4 embodies âthe same values of free exercise and governmental nonÂ­involvement secured by the religious clauses of the First Amendment.â Ams. United for Separation of Church & State Fund, Inc. v. State, 648 P.2d 1072, 1081-82 (Colo. 1982); see also Conrad v. City & Cnty. of Denver, 656 P.2d 662, 670-71 (Colo. 1982) (âBecause the federal and state constitutional provisions embody similar values, we look to the body of law that has been developed in the federal courts with respect to the meaning and application ofÂ the First Amendment for useful guidance.â); Young Life v. Div. of Empât & Training, 650 P.2d 515, 526 (Colo. 1982) (âArticle II, Section 4 echoes the principle of constitutional neutrality underscoring the First Amendment.â).

 Â¶99Â Â Â Â Â Â Â  Colorado appellate courts have consistently analyzed similar free exercise claims under the United States and Colorado Constitutions, and have regularly relied on federal precedent in interpreting article II, section 4. See, e.g., Ams. United, 648 P.2d at 1072; Conrad, 656 P.2d at 670; Young Life, 650 P.2d at 526; People in Interest of D.L.E., 645 P.2d 271, 275-76 (Colo. 1982); Johnson v. Motor Vehicle Div., 197 Colo. 455, 458, 593 P.2d 1363, 1364 (1979); Pillar of Fire v. Denver Urban Renewal Auth., 181 Colo. 411, 416, 509 P.2d 1250, 1253 (1973); Zavilla v. Masse, 112 Colo. 183, 187, 147 P.2d 823, 825 (1944); In re Marriage of McSoud, 131 P.3d 1208, 1215 (Colo. App. 2006); In the Interest of E.L.M.C., 100 P.3d 546, 563 (Colo. App. 2004); see also Paul Benjamin Linton, Religious Freedom Claims and Defenses Under State Constitutions, 7 U. St. Thomas J. L. & Pub. Polây 103, 116-17 (2013) (observing that âa claim or defense that would not prevail under the Free ExerciseÂ Clause of the First Amendment would not likely prevail under article II, section 4, eitherâ). Finally, the Colorado Supreme Court has never indicated that an alternative analysis should apply.

 Â¶100Â Â Â Â Â Â Â  Given the consistency with which article II, section 4 has been interpreted using First Amendment case law â and in the absence of Colorado Supreme Court precedent suggesting otherwise â we hesitate to depart from First Amendment precedent in analyzing Masterpieceâs claims. Therefore, we see no reason why Smithâs holding â that neutral laws of general applicability do not offend the Free Exercise Clause â is not equally applicable to claims under article II, section 4, and we reject Masterpieceâs contention that the Colorado Constitution requires the application of a heightened scrutiny test.

 3. Rational Basis Review

 Â¶101Â Â Â Â Â Â Â  Having concluded that CADA is neutral and generally applicable, we easily conclude that it is rationally related to Coloradoâs interest in eliminating discrimination in places of public accommodation. The Supreme Court has consistently recognized that states have a compelling interest in eliminating suchÂ discrimination and that statutes like CADA further that interest. See Hurley, 515 U.S. at 572 (Public accommodation laws âare well within the Stateâs usual power to enact when a legislature has reason to believe that a given group is the target of discrimination . . . .â); see also Bd. of Dirs. of Rotary Intâl v. Rotary Club, 481 U.S. 537, 549 (1987) (government had a compelling interest in eliminating discrimination against women in places of public accommodation); Roberts v. United States Jaycees, 468 U.S. 609, 623 (1984) (same); Bob Jones Univ., 461 U.S. at 604 (government had a compelling interest in eliminating racial discrimination in private education).

 Â¶102Â Â Â Â Â Â Â  Without CADA, businesses could discriminate against potential patrons based on their sexual orientation. Such discrimination in places of public accommodation has measurable adverse economic effects. See Mich. Depât of Civil Rights, Report on LGBT Inclusion Under Michigan Law with Recommendations for Action 74-90 (Jan. 28, 2013), available at http://perma.cc/Q6UL-L3JR(detailing the negative economic effects of anti-gay, lesbian, bisexual, and transgender discrimination in places of publicÂ accommodation). CADA creates a hospitable environment for all consumers by preventing discrimination on the basis of certain characteristics, including sexual orientation. In doing so, it prevents the economic and social balkanization prevalent when businesses decide to serve only their own âkind,â and ensures that the goods and services provided by public accommodations are available to all of the stateâs citizens.

 Â¶103Â Â Â Â Â Â Â  Therefore, CADAâs proscription of sexual orientation discrimination by places of public accommodation is a reasonable regulation that does not offend the Free Exercise Clauses of the First Amendment and article II, section 4.

 VI. Discovery Requests and Protective Order

 Â¶104Â Â Â Â Â Â Â  We also disagree with Masterpieceâs contention that the AUJ abused his discretion by denying it discovery as to the type of wedding cake Craig and Mullins intended to order and details of their wedding ceremony. See Â§ 24-4-106(7); DCP Midstream v. Anadarko Petroleum Corp., 2013 CO 36, Â¶24, 303 P.3d 1187, 1192 (rulings on motions to compel discovery reviewed for an abuse of discretion).

 
 Â 

 Â¶105Â Â Â Â Â Â Â  We agree with the AUJâs conclusion that these subjects were not relevant in resolving the essential issues at trial. The only issues before the AUJ were (1) whether Masterpiece violated CADA by categorically refusing to serve Craig and Mullins because of its opposition to same-sex marriage and, if so, (2) whether CADA, as applied to Masterpiece, violated its rights to freedom of expression and free exercise of religion. Evidence pertaining to Craigâs and Mullinsâ wedding ceremony â including the nature of the cake they served â had no bearing on the legality of Masterpieceâs conduct. The decision to categorically deny service to Craig and Mullins was based only on their request for a wedding cake and Masterpieceâs own beliefs about same-sex marriage. Because Craig and Mullins never conveyed any details of their desired cake to Masterpiece, evidence about their wedding cake and details of their wedding ceremony were not relevant.

 Â¶106Â Â Â Â Â Â Â  Accordingly, we conclude that the AUJ did not abuse his discretion by denying Masterpieceâs requested discovery. VII. Commissionâs Cease and Desist Order

 
 Â 

 Â¶107Â Â Â Â Â Â Â  Finally, we reject Masterpieceâs contention that the Commissionâs cease and desist order exceeded the scope of its statutory authority. Where the Commission finds that CADA has been violated, section 24-34-306(9) provides that it âshall issue and cause to be served upon the respondent an order requiring such respondent to cease and desist from such discriminatory or unfair practice and to take such action as it may orderâ in accordance with the provisions of CADA. See also Â§ 24-34-305(c)(I), C.R.S. 2014 (The Commission is empowered to eliminate discriminatory practices by âformulat[ing] plans for the elimination of those practices by educational or other means.â).

 Â¶108Â Â Â Â Â Â Â  Masterpiece argues that the Commission does not have the authority to issue a cease and desist order applicable to unidentified parties, but rather, it may only issue orders with respect to the specific complaint or alleged discriminatory conduct in each proceeding. We disagree with Masterpieceâs reading of the statute.

 Â¶109Â Â Â Â Â Â Â  First, individual remedies are âmerely secondary and incidentalâ to CADAâs primary purpose of eradicating discriminatoryÂ practices. Connors v. City of Colorado Springs, 962 P.2d 294, 298 (Colo. App. 1997); see also Brooke v. Rest. Servs., Inc., 906 P.2d 66, 69 (Colo. 1995) (observing that providing remedies for individual employees under CADAâs employment discrimination provisions is merely secondary and incidental to its primary purpose of eradicating discrimination by employers); Agnello v. Adolph Coors Co., 689 P.2d 1162, 1165 (Colo. App. 1984) (same).

 Â¶110Â Â Â Â Â Â Â  Further, Masterpiece admitted that its refusal to provide a wedding cake for Craig and Mullins was pursuant to the companyâs policy to decline orders for wedding cakes for same-sex weddings and marriage ceremonies. The record reflects that Masterpiece refused to make wedding cakes for several other same-sex couples. In this respect, the Commissionâs order was aimed at the specific âdiscriminatory or unfair practiceâ involved in Craigâs and Mullinsâ complaint. Â§ 24-34-306(9).

 Â¶111Â Â Â Â Â Â Â  Accordingly, we conclude that the Commissionâs cease and desist order did not exceed the scope of its powers.

 VIII. Conclusion

 Â¶112Â Â Â Â Â Â Â  The Commissionâs order is affirmed.

 
 Â 

 CHIEF JUDGE LOEB and JUDGE BERGER concur.


 [1] On June 26, 2015, the United States Supreme Court announced Obergefell v. Hodges, 576 U.S. ___, ___, 135 S. Ct. 2584, 2604 (2015), reaffirming that the âright to marry is a fundamental right inherent in the liberty of the personâ and holding that the Due Process and Equal Protection Clauses of the Fourteenth Amendment guarantee same-sex couples a fundamental right to marry. Colorado has recognized same-sex marriages since October 7, 2014, when, based on other litigation, then Colorado Attorney General John Suthers instructed all sixty-four county clerks in Colorado to begin issuing same-sex marriage licenses. See Jordan Steffen & Jesse Paul, Colorado Supreme Court, Suthers Clear Way for Same-Sex Licenses, Denver Post, Oct. 7, 2014, available at http://perma.cc/7N7G-4LD3.

 Â 

 [2] Section 24-4-106(7), C.R.S. 2014, outlines the scope of judicial review of agency action and provides:

 If the court finds no error, it shall affirm the agency action. If it finds that the agency action is arbitrary or capricious, a denial of statutory right, contrary to constitutional right, power, privilege, or immunity, in excess of statutory jurisdiction, authority, purposes, or limitations, not in accord with the procedures or procedural limitations of this article or as otherwise required by law, an abuse or clearly unwarranted exercise of discretion, based upon findings of fact that are clearly erroneous on the whole record, unsupported by substantial evidence when the record is considered as a whole, or otherwise contrary to law, then the court shall hold unlawful and set aside the agency action and shall restrain the enforcement of the order or rule under review, compel any agency action to be taken which has been unlawfully withheld or unduly delayed, remand the case for further proceedings, and afford such other relief as may be appropriate. In making the foregoing determinations, the court shall review the whole record or such portions thereof as may be cited by any party. In all cases under review, the court shall determine all questions of law and interpret the statutory and constitutional provisions involved and shall apply such interpretation to the facts duly found or established.

 [3] In his procedural order, the ALJ notified the parties of his deadline for âfiling all motions pursuant to Rule 12, Colorado Rules of Civil Procedure,â and the parties proceeded as if the rules of civil procedure applied. Section 24-34-306(5), C.R.S. 2014, provides that âdiscovery procedures may be used by the commission and the parties under the same circumstances and in the same manner as is provided by the Colorado rules of civil procedure.â

 [4] Having affirmed the denials of the motions to dismiss, we now refer to Masterpiece and Phillips collectively as âMasterpieceâ in this opinion.

 [5] CADA also bars discrimination in places of public accommodation on the basis of disability, race, creed, color, sex, marital status, national origin, and ancestry. Â§ 24-34-601(2)(a), C.R.S. 2014.

 [6] An Oregon ALJ reached a similar conclusion when addressing an Oregon bakeryâs argument that its refusal to create a wedding cake for a same-sex couple was not on account of the coupleâs sexual orientation, but rather the bakeryâs objection to participation in the event for which the cake would be prepared â a same-sex wedding ceremony. In the Matter of Klein, Nos. 44-14 & 45-15, 2015 WL 4503460, at *52 (Or. Commâr of Labor & Indus. July 2, 2015) (âIn conclusion, the forum holds that when a law prohibits discrimination on the basis of sexual orientation, that law similarly protects conduct that is inextricably tied to sexual orientation.â).

 [7] That law creates a private cause of action for parties seeking remedies against public and private parties who conspired to interfere with their civil rights.

 [8] This case is distinguishable from the Colorado Civil Rights Divisionâs recent findings that Azucar Bakery, Le Bakery Sensual, and Gateaux, Ltd., in Denver did not discriminate against a Christian patron on the basis of his creed when it refused his requests to create two bible-shaped cakes inscribed with derogatory messages about gays, including âHomosexuality is a detestable sin. Leviticus 18:2.â Jack v. Azucar Bakery, Charge No. P20140069X, at 2 (Colo. Civil Rights Div. Mar. 25, 2015), available at http://perma.cc/5K6D-VV8U;Jack v. Le Bakery Sensual, Inc., Charge No. P20140070X (Colo. Civil Rights Div. Mar. 24, 2015), available at http://perma.cc/35BW-9C2N;Jack v. Gateaux, Ltd., Charge No. P20140071X (Colo. Civil Rights Div. Mar. 24, 2015), available at http://perma.cc/JN4U-NE6V. The Division found that the bakeries did not refuse the patronâs request because of his creed, but rather because of the offensive nature of the requested message. Importantly, there was no evidence that the bakeries based their decisions on the patronâs religion, and evidence had established that all three regularly created cakes with Christian themes. Conversely, Masterpiece admits that its decision to refuse Craigâs and Mullinsâ requested wedding cake was because of its opposition to same-sex marriage which, based on Supreme Court precedent, we conclude is tantamount to discrimination on the basis of sexual orientation. 

 For the same reason, this case is distinguishable from a Kentucky trial courtâs decision that a T-shirt printing company did not violate Lexington-Fayette Countyâs public accommodations ordinance when it refused to print T-shirts celebrating premarital romantic and sexual relationships among gays and lesbians. See Hands on Originals, Inc. v. Lexington-Fayette Urban Cnty. Human Rights Commân, No. 14-CI-04474, slip op. at 9 (Fayette Cir. Ct. Apr. 27, 2015), available at http://perma.cc/75FY-Z77D. There, evidence established that the T-shirt printer treated homosexual and heterosexual groups alike. Id. Specifically, in the previous three years, the printer had declined several orders for T-shirts promoting premarital romantic and sexual relationships between heterosexual individuals, including those portraying strip clubs and sexually explicit videos. Id. Although the print shop, like Masterpiece, based its refusal on its opposition to a particular conduct â premarital sexual relationships â such conduct is not âexclusively or predominantlyâ engaged in by a particular class of people protected by a public accommodations statute. See Bray v. Alexandria Womenâs Health Clinic, 506 U.S. 263, 270 (1993). Opposition to premarital romantic and sexual relationships, unlike opposition to same-sex marriage, is not tantamount to discrimination on the basis of sexual orientation.

 [9] Although Masterpiece observes that the Colorado Constitution provides greater liberty of speech than the United States Constitution, it does not distinguish the two, and its argument relies almost exclusively on federal First Amendment case law. Therefore, we will not distinguish the First Amendment and article II, section 10 as applied to Masterpieceâs freedom of speech claim.

 [10] The Oregon Bureau of Labor and Industry and the New Jersey Division of Civil Rights reached similar conclusions in related cases. See Bernstein v. Ocean Grove Camp Meeting Assân, No. CRT 6145Â­09, at 13 (N.J. Div. Civil Rights Oct. 22, 2012), available at http://perma.cc/G5VF-ZS2M(âBecause there was no message inherent in renting the Pavilion, there was no credible threat to Respondentâs ability to express its views.â); In the Matter of Klein, 2015 WL 4503460, at *72 (â[T]hat Respondents bake a wedding cake for Complainants is not âcompelled speechâ that violates the free speech clause of the First Amendment to the U.S. Constitution.â).

 [11] Section 24-34-601(2)(a) reads:

 It is discriminatory practice and unlawful for a [place of public accommodation] . . . to publish, circulate, issue, display, post, or mail any written, electronic, or printed communication, notice, or advertisement that indicates that the full and equal enjoyment of the goods, services, facilities, privileges, advantages, or accommodations of a place of public accommodation will be refused, withheld from, or denied an individual or that an individualâs patronage or presence at a place of public accommodation is unwelcome, objectionable, unacceptable, or undesirable because of disability, race, creed, color, sex, sexual orientation, marital status, national origin, or ancestry.

 [12] In the wake of Smith, Congress passed the Religious Freedom Restoration Act (RFRA), which restored the Sherbert balancing test and provides that if government action substantially burdens a personâs exercise of religion, the person is entitled to an exemption from the rule unless the government can demonstrate that the application of the burden to the person is the least restrictive means of furthering a compelling government interest. 42 U.S.C. Â§ 2000bb-1(b) (1994). In City of Boerne v. Flores, 521 U.S. 507, 532 (1997), superseded by statute as stated in Burwell v. Hobby Lobby Stores, Inc., 573 U.S. __, 134 S. Ct. 2751 (2014), the Supreme Court held that RFRA was unconstitutional as applied to the states. Colorado has not enacted a similar law, although many states have. See 2 W. Cole Durham et al., Religious Organizations and the Law Â§ 10:53 (2015) (observing that sixteen states â Alabama, Arizona, Connecticut, Florida, Idaho, Illinois, Louisiana, Missouri, New Mexico, Oklahoma, Pennsylvania, Rhode Island, South Carolina, Tennessee, Texas, and Virginia â have passed versions of RFRA to restore pre-Smith scrutiny to their own laws that burden religious exercise).

 [13] The parties do not address whether for-profit entities like Masterpiece Cakeshop have free exercise rights under the First Amendment and article II, section 4 of the Colorado Constitution. Citing the Tenth Circuitâs opinion in Hobby Lobby Stores, Inc. v. Sebelius, 723 F.3d 1114, 1137 (10th Cir. 2013), the ALJ noted that âclosely held for-profit business entities like Masterpiece Cakeshop also enjoy a First Amendment right to free exercise of religion.â That decision was later affirmed by the Supreme Court. See Burwell, 573 U.S. at ___, 134 S. Ct. at 2758.

 However, both the Tenth Circuit and the Supreme Court held only that RFRAâs reference to âpersonsâ includes for-profit corporations like Hobby Lobby, and therefore that federal regulations restricting the activities of closely held for-profit corporation like Hobby Lobby must comply with RFRA. See id. at ___, 134 S. Ct. at 2775 (â[W]e hold that a federal regulationâs restriction on the activities of a for-profit closely held corporation must comply with RFRA.â); Hobby Lobby, 723 F.3d at 1137 (â[W]e conclude that . . . Hobby Lobby and Mardel . . . qualify as âpersonsâ under RFRA.â). Because RFRA does not apply to state laws infringing on religious freedoms, City of Boerne, 521 U.S. at 532, it is unclear whether Masterpiece (as opposed to Phillips) enjoys First Amendment free exercise rights. Further, because Colorado appellate courts have not addressed the issue, it is similarly unclear whether Masterpiece has free exercise rights under article II, section 4.

 Regardless, because the parties do not address this issue â and because our conclusion does not require us to do so â we will assume, without deciding, that Masterpiece has free exercise rights under both the First Amendment and article II, section 4.

 [14] At least two state supreme courts have rejected free exercise challenges to public accommodations laws in the commercial context, concluding that such laws are neutral and generally applicable. See Swanner v. Anchorage Equal Rights Commân, 874 P.2d 274, 279-80 (Alaska 1994) (Free Exercise Clause does not allow landlord to discriminate against unmarried couples in violation of public accommodations statute); North Coast Womenâs Care Med. Grp., Inc. v. San Diego Cnty. Superior Court, 189 P.3d 959, 967 (Cal. 2008) (â[T]he First Amendmentâs right to the free exercise of religion does not exempt defendant physicians here from conforming their conduct to the Actâs antidiscrimination requirements even if compliance poses an incidental conflict with defendantsâ religious beliefs.â).




These opinions are not final. They may be modified, changed or withdrawn in accordance with Rules 40 and 49 of the Colorado Appellate Rules. Changes to or modifications of these opinions resulting from any action taken by the Court of Appeals or the Supreme Court are not incorporated here. 



Colorado Court of Appeals Opinions || August 13, 2015


Back